# Caddell v. The State.

## *Indictment for Murder.*

1. *Organization of jury; motion to quash venire.*—Where in the organization of a jury to try a capital case, the fact that the same person answered to the name of "Acey Blake" and "A. F. Blake" when called at different times, constitutes no ground to quash the venire, when it is shown that said names appearing on the venire were each intended to, and did, in fact, designate a different person.

2. *Same; same.*—The fact that one of the persons who was drawn to serve on the special venire in a capital case was not summoned or was absent at the time of the trial, constitutes no ground for quashing the venire.

3. *Homicide; conspiracy; admissibility of evidence.*—The defendant in a criminal case was jointly indicted with a woman for the murder of his wife and was tried separately. There was evidence tending to show that his co-defendant was his paramour; that he was at enmity with his wife; had several times threatened her life; that the deceased had commenced a prosecution against his co-defendant for living with him in adultery; that his co-defendant had lived at his house, and, on the day of the homicide, the deceased with some officers, having a warrant to search the woman's trunk, came to the defendant's house for that purpose; that when the deceased came to the house, the defendant threatened to

129  57
130  65

129  57
136  11

129  57
139  42
139  43

129  57
140  26
140  56

129  57
143  43

[Caddell v. The State.]

kill her, and afterwards told his co-defendant to make the deceased get out of the house; that in talking to his wife the defendant applied a vile epithet, whereupon she exhibited a pistol and said she would kill him if he repeated the statement; that while the search was proceeding, the defendant called his co-defendant into an adjoining room and said something to her in a low tone of voice, which could not be heard by the other persons in the house, where-· upon his co-defendant returned to where the deceased was, and, after saying something to her, snatched the pistol away from the deceased and fired, inflicting the fatal wound. *Held*: (1.) It was competent for a witness, who testified as to his having a conversation with the defendant about the conduct of another man toward his co-defendant, to state that the defendant said to him "he would kill anybody that interfered with him and that woman." (2.) The acts of undue and improper intimacy between the defendant and his co-defendant were admissible as tending to show his infatuation for the woman and as disclosing a motive for inciting the crime. (3.) As evidence of motive induced by actual interference, it was proper to prove the institution by the deceased of a prosecution of the woman for adultery, by introducing in evidence an affidavit and warrant in that case; and it is in the discretion of the court as to whether such evidence shall precede or come after the evidence disclosing acts of participation in the conspiracy to commit the crime. (4.) In such a case for the incrimination of the defendant as a conspirator with, or as an accomplice of, the actual slayer, it is not necessary to prove by direct, positive evidence, that he incited or encouraged his co-defendant to the killing.

4. *Insanity; competency of non-expert testimony.*—On an issue of sanity *vel non*, a non-expert witness may give his opinion affirming the sanity of the person inquired about, without a specification of the facts upon which such opinion is based; and it is competent for such witness, who is shown to have known the person inquired about, to testify that he had never seen any indications or evidence of insanity.

5. *Homicide; admissibility of evidence.*—Where a husband is indicted for the murder of his wife, and there is evidence tending to show unlawful or criminal relations between him and another woman, who staid at the defendant's house, and a witness has testified that the defendant and the deceased lived happily and agreeably together until said woman went to their house, it is not competent or admissible

for such witness to further testify that after said woman.
went to the house, she had often seen the deceased crying;
and the admission of such testimony constitutes a reversible.
error.        ̄

APPEAL from the Circuit Court of Bibb.

Tried before the Hon. JOHN MOORE.

The appellant in this case, Festus Caddell, was.
jointly indicted with Lillian Gardner for the murder
of Mamie Caddell, his wife, by shooting her with a
pistol. On motion of the defendants a severance was.
had and the defendant in the present case was tried
separately, was convicted of murder in the first degree
and sentenced to be hanged.

The court ordered that fifty persons be drawn as.
special jurors to serve in said cause, and that said spe-
cial jurors so drawn and the regular jurors for the
week in which the case was set for trial be served upon
the defendant. When the case was called for trial the
defendant moved the court to quash the venire upon
the ground that fifty persons together with the regu-
lar jurors drawn and summoned for the week of the
trial were not contained in the venire served on the
defendant, as required by the order of the court, but
only forty-nine persons' names were contained in said
venire. Upon the hearing of this motion, it was shown
that in the venire, a copy of which had been served on
the defendant, there were contained two names "A.
F. Blake, farmer, beat 9" and "Acey Blake, farmer,
beat 9." It was shown that when the name of A. F.
Blake was drawn and called, he appeared and after be-
ing examined as to his competency, he was challenged
for cause. After several other names had been drawn,
called and examined, Acey Blake was drawn and called.
In response thereto the same person who had answered
to the name of A. F. Blake responded. In answer to
questions propounded to him by the court said per-
son stated that his name was "Acey Blake," that he
was usually called "Acey Blake;" that the sheriff had
served the summons for "Acey Blake" on him, and there
was no other person residing in beat 9 named "Acey
Blake;" but that another man named Acey Blake had

lived in beat 9 until about twelve months prior to that
time, when the said person named Acey Blake had
moved out of beat 9 and moved to beat 10, where he
was now living. Including the name of "Acey Blake"
the venire served upon the defendant contained the
full number required by the order of the court, while
excluding that name it was one short. The court over-
ruled the motion to quash the venire, and to this rul-
ing the defendant duly excepted.

The State introduced the physician who attended
the deceased, Mamie Caddell who testified that she
died on May 29, 1900, from a wound inflicted by a
pistol ball. Thereupon A. P. Davidson was introduced
as a witness for the State, and upon his testifying that
he knew the defendant, he was asked the following ques-
tion: "Did you ever know the defendant to make any
threats against Mamie Caddell?" The defendant ob-
jected to this question because the *corpus delicti* had
not been proven, and because the defendant had not
been shown to be in any way connected with the kill-
ing of Mamie Caddell. The court overruled the ob-
jection, and the defendant duly excepted. In answer
to this question the witness, among other things, testi-
fied that in talking with the defendant in reference to
the conduct of one Thomas towards Mrs. Gardner, who
was jointly indicted with the defendant, and upon the
witness telling the defendant he was going to get into
trouble about Mrs. Gardner, the defendant replied: "I
don't give a d—. That he would kill anybody that in-
terfered with him and that woman." The defendant duly
objected to this part of the witness' testimony and
moved to exclude it from the jury. The court overruled
the objection, and the defendant duly excepted.

Mrs. Mulkey, a witness for the State, testified that
Mamie Caddell, who was the wife of the defendant,
was her daughter; that she and the defendant were
married in April, 1899; that she was at the house of
the defendant in January, 1900. The bill of exceptions
then states the further testimony of this witness as
follows: "Mrs. Gardner was there. She was there
every time I was there subsequent to the preceding Sep-

tember.   Defendant and Mamie lived happily and
agreeably together until Mrs. Gardner went there.   De-
fendant objected to this last statement and moved to
exclude it.   The court overruled the objection and mo-
tion, and the defendant excepted.   After Mrs. Gardner
went there I would often see Mamie crying when I was
with her.   Defendant objected to this statement and
moved to exclude it.   The court overruled the motion
and the defendant excepted."   This witness, Mrs.
Mulkey, also testified against the objection and excep-
tion of the defendant to having seen acts of undue and
improper intimacy between the defendant and Mrs.
Gardner while they were in the defendant's house, and
that the deceased came into the room on one occasion
and saw the defendant and Mrs. Gardner sitting to-
gether with their arms around each other.   Several
of the witnesses introduced for the State testified,
against the objection and exception of the defendant,
to having heard the defendant make threats against his
wife, Mamie Caddell, and to having heard him tell
her that he was going to kill her.

The tendency of the evidence to show the liason be-
tween Mrs. Gardner and the defendant and a conspiracy
on the part of her and the defendant to kill the de-
ceased is sufficiently stated in the opinion.

Against the objection and exception of the defendant,
the State also proved that Mamie Caddell, the deceased,
had commenced a prosecution against Mrs. Gardner
for living in adultery with the defendant, by making an
affidavit before a justice of the peace, upon which
affidavit a warrant was issued.   This affidavit and war-
rant were also introduced in evidence against the ob-
jection and exception of the defendant.   On the part
of the defendant, there was evidence introduced to show
that Mrs. Gardner was insane.

In rebuttal, the State introduced one Dr. Meadows,
who testified that he had been a practicing physician
for seventeen years, and had known Mrs. Gardner for
more than a year and had attended her professionally
when she was sick and had seen her frequently.   This
witness testified that he had never seen any indications
of insanity in her.   In answer to the question asked him.

[Caddell v. The State.]

by the defendant on cross-examination, he said that he had never made a special study of insanity, and knew very little about it. Thereupon the defendant moved to exclude the statement of the witness that he had never seen any indications of insanity in Mrs. Gardner upon the ground that he was not an expert. The court refused the motion, and the defendant duly excepted.

J. M. McMaster, a witness for the State, examined in rebuttal, after testifying that he had known Mrs. Gardner for more than a year, had acted as her attorney and attended to her business, and had seen her very often and had talked with her on various occasions and various subjects, then stated that "she is sane. I never saw any insanity in her." The defendant moved the court to exclude this testimony upon the ground that the witness was not an expert and states no facts sufficient to base an opinion upon. The court refused the motion, and the defendant duly excepted.

CATO D. GLOVER and W. H. LOGAN, for appellant. The court erred in failing to sustain the defendant's motion to quash the venire.—*Jackson v. State*, 77 Ala. 18; *Ryan v. State*, 100 Ala. 105; *Thomas v. State*, 94 Ala. 74; *Roberts v. State*, 66 Ala. 515; *Darby v. State*, 9 S. R. 515; *Walker v. State*, 21 S. R. 56; *Wilkins v. State*, 21 S. R. 56.

The court erred in allowing the witness Davidson to testify that he heard the defendant say that "he would kill anybody that interfered with him and that woman." Such threat was not directed against any particular person, nor is it shown to have been directed against the deceased.—*Redd v. State*, 68 Ala. 492; *King v. State*, 89 Ala. 146; *Hanson v. State*, 25 S. R. 23.

The evidence introduced by the State as to the sanity of Mrs. Gardner and as to the witness never having seen any evidence of insanity on her part, was inadmissible.—*Parsons v. State*, 81 Ala. 577; *Gunter v. State*, 83 Ala. 96.

CHAS. G. BROWN, Attorney-General, for the State.

SHARPE, J.—From the facts shown in connection with the motion to quash the *venire* we are of the opinion that the names "Acey Blake" and A. F. Blake appearing on the *venire* were each intended to and did in fact designate a different person. Therefore, the case is not brought within the principle which vitiates a special *venire* where by repetition of names jurors are diminished below the requisite number, as in the cases of *Darby v. State,* 92 Ala. 9; *McQueen v. State,* 94 Ala. 50; *Roberts v. State,* 68 Ala. 515.

The fact if it be a fact that one of those persons was not summoned or was absent at the trial was not ground for quashing the *venire.*—*Webb v. State,* 100 Ala. 47; *Arp v. State,* 97 Ala. 5; *Johnson v. State,* 94 Ala. 35; *Johnson v. State,* 47 Ala. 9.

The defendant was indicted jointly with one Lillian Gardner for the alleged murder of his wife. Severance was had and he was tried and convicted separately. After proving the undisputed fact that the deceased was killed by a pistol shot, the State introduced a witness who testified, among other things, that in a conversation about the conduct of one Thomas towards Mrs. Gardner the defendant said "he would kill anybody who interfered with him and that woman."

Mere threats, when directed to a particular person, are not evidence of malice or evil purpose towards another, nor can threats which are merely general be considered as menacing any particular person; but the threat in question was neither so restricted nor general. It comprehended those who might interfere with defendant's relations with Mrs. Gardner; and if there was evidence indicating that defendant believed the deceased so interfered and that he instigated her death, the threat was competent to be shown, and the question of whether the threat applied to her was for the jury.—*Ford v. State,* 71 Ala. 385; *Jordan v. State,* 79 Ala. 9; *Redd v. State,* 68 Ala. 492.

The threat against whoever might interfere with defendant and Mrs. Gardner, and likewise acts of undue intimacy between him and her were admissible as tending to show his infatuation for that woman

and consequently as disclosing a motive for inciting the crime.—*Johnson v. State*, 94 Ala. 35. And as further evidence of motive adduced by an actual interference, it was proper to prove the prosecution for adultery, by introducing the affidavit and warrant in that case. Evidence of motive whether proceeding from malice or other cause is always admissible for the prosecution as making a conspiracy probable. Of itself such evidence may be insufficient, but whether it shall precede or come after that disclosing acts of participation in the conspiracy is in the discretion of the court. Wright on Crim. Conspiracy, 214.

To the incrimination of defendant as a conspirator with, or as an accomplice of the actual slayer, direct and positive proof that he incited or encouraged her to the killing was not essential provided there was proof of circumstances from which it could properly have been inferred that he did so.—*Martin v. State*, 89 Ala. 115; *Jordan v. State, supra*.

Here there was evidence tending to show that Mrs. Gardner was defendant's paramour; that he was at enmity with the deceased and had several times threatened her life; that she had commenced a prosecution against Mrs. Gardner for living with him in adultery; that on the day of the homicide, Mrs. Gardner being about to remove her trunks from defendant's house, where she had been staying, the deceased came with an officer having a warrant to search those trunks; that when she came to the house defendant threatened to kill her and afterwards told Mrs. Gardner to make her get out; that upon his applying a vile epithet to the deceased she exhibited a pistol and said she would kill him if he did so again; that while the search was proceeding he called Mrs. Gardner into another room and said to her in a low voice something others in the house could not understand, whereupon she returned to where the search was being conducted and after saying something to the deceased about an article some one had taken from the trunks, she snatched a pistol from the person of the deceased and shot her. This was evidence proper to be submitted to the jury on both

the question of whether the deceased came within the scope of the threat against those interfering and of whether she became a victim of that and other threats.

On an inquiry of sanity *vel non* the rule applicable to non-expert witnesses is that opinions opposed to sanity, are admissible only when stated in connection with the facts respecting the conduct abnormal or otherwise of the person whose sanity is questioned; but opinions affirming sanity may be based on a mere negation of unnatural or peculiar conduct without a specification of facts.—*Ford v. State, supra; Parsons v. State,* 81 Ala. 577; *Dominick v. Randolph,* 124 Ala. 57. There was no infraction of the rule in the admission here of testimony on that subject.

A witness testifying for the prosecution with reference to Mrs. Gardner's stay at defendant's house said "defendant and Mamie [the deceased] lived happily and agreeably together until Mrs. Gardner went there." A general objection to this being overruled the witness further testifying in the same connection said: "After Mrs. Gardner went there I would often see Mamie crying when I was with her." The objection made to this statement though general should have been sustained. Manifestations of grief by the deceased not in defendant's presence, were as to him *res alios acta;* the same as her spoken utterances would have been under like circumstances.

Though it be assumed that her grief was caused by defendant's illicit amour, that fact except as disclosed to him could not have influenced his conduct and had no tendency to implicate him in the killing. This testimony was, therefore, palpably irrelevant to the issue tried. It was, however, well calculated to excite the jury to increased sympathy for the deceased, and to a correspondingly increased indignation against the defendant. The pivotal question was whether the killing was of the slayer's own volition or was participated in by the defendant by means of his counsel or encouragement. The determination of that question rested wholly in inference from circumstantial ev-

[Mooring v. The State.]

idence.    It cannot be seen that the illegal evidence re-
ferred to did not illegally assist the inference neces-
sary to the jury's finding, and, therefore, its admission
necessitates a reversal of the judgment.

Reversed and remanded.