[Cawley v. The State.]

# Cawley v. The State.

### Indictment for Murder.

1. *Minute entry; when presence of defendant shown thereby.* The minute entry of the arraignment of a defendant under an indictment for murder, which recites that "the defendant being in open court attended by his counsel and being duly arraigned," etc., then continues showing the order of the court setting the day for trial and the drawing of the special venire, and then sets out the rulings of the court upon the motions to quash such special venire, sufficiently shows the presence of the defendant, when the several motions to quash were ruled upon by the court.

2. *Organization of special venire; when properly quashed.*—When in the drawing of names of persons to serve as special jurors for the trial of a capital case, the names of persons who were drawn for the regular petit juries for the week in which the trial was to be had are placed upon the venire, the venire thus drawn is improper and the court should, on motion of the solicitor, quash it and proceed to draw another from the jury box.

3. *Same; same; error for court to put back in box names of jurors drawn for special venire.*—It is error for the court to replace in the jury box the names of jurors drawn to serve upon a special venire, and when after this is done, a special venire is drawn to try another capital case, and upon it appears the names of the jurors which were drawn upon a former special venire, the second special venire will, upon motion properly made, be quashed.

4. *Same; venire not quashed by reason of mistake in name of one of the jurors.*—A mistake in writing the name of one who was drawn as a special juror to try a capital case, furnishes no ground for quashing the special venire; and the court has authority under the statute (Code, § 5007), to correct this mistake by discarding the name of the person so drawn and ordering another to be forthwith summoned to supply his place.

5. *Same; not necessary for list served on the defendant to show which are special and regular jurors.*—The fact that the list of jurors served upon the defendant in a capital case does not designate the names of jurors specially drawn and those drawn and summoned for the week of the court

[Cawley v. The State.]

in which the trial is to be had, constitutes no ground for quash-
ing the venire; the statute (Code, §§ 5004, 5273) not requir-
ing such designation.

6. *Homicide; admissibility of evidence.*—Where on a trial under
an indictment for murder, it was shown that the deceased
was killed on a road which ran by the defendant's house,
and there was some evidence tending to show that the de-
ceased had passed along said road going to a house beyond
the defendant's only ·a short time before the killing, and
there was some evidence tending to show that the defend-
ant had a grudge against the deceased, it is competent for
the State to ask a witness who was shown to have been
familiar with the location and distance about the scene of
the killing, that if a person left the house of the deceased
and went along the road to the place of the killing, if
there were any obstructions to prevent such person from
being seen from the defendant's house.

7. *Homicide; plea of insanity; admissibility of evidence.*—On a
trial under an indictment for murder, where the defendant
pleads not guilty, and not guilty by reason of insanity, acts
and declarations of the defendant subsequent, as well as
previous to the killing, are admissible in evidence to show
his true mental condition at the time of the homicide.

8. *Homicide; admissibility of evidence.*—On a trial under an in-
dictment for murder, where the defendant sets up the plea
of self defense, declarations made by the defendant to a
third party, in which he states that the deceased was mad
with him and was anxious to get rid of him, the defendant,
in order that he could commit an offense which the defend-
ant interfered with, are admissible in evidence.

9. *Same; same.*—On a trial under an indictment for murder,
where the defendant sets up self defense, and there is evi-
dence tending to establish such defense, it is competent for
the defendant, upon being examined as a witness in his
own behalf, to testify that the deceased was in the habit
of carrying a pistol.

10. *Homicide; self defense; charge to the jury.*—On a trial under
an indictment for murder, where the defendant pleads self
defense, charges requested by the defendant, which as-
sume as matter of law that facts postulated therein created
imminent peril to life or limb, invade the province of the
jury, whose duty it is to determine whether the defend-
ant was in imminent peril, and such charges are properly
refused.

9c

11. *Same; charge as to reasonable doubt.*—In a criminal case, a charge which instructs the jury that a reasonable doubt "is a doubt for which a reason can be given," is properly refused, being calculated to confuse and mislead the jury.

12. *Same; plea of self defense and insanity; charge to the jury.* On a trial under an indictment for murder, where the defendant pleads not guilty and not guilty by reason of insanity, and the two issues are submitted and tried at the same time, a charge is erroneous and properly refused which instructs the jury that "if the jury believe from the evidence that the defendant committed the act under circumstances which would be criminal or unlawful if he was sane, the verdict should be not guilty, if the killing was an offspring or product of mental disease in the defendant."

13. *Same; self defense; charge to the jury.*—On a trial under an indictment for murder, where the defendant pleads self defense, a charge is erroneous and properly refused which instructs the jury that "if the defendant did not provoke or bring on the difficulty, and the deceased advanced upon him drawing his hand from his pocket in such a manner as to indicate to a reasonable mind that his purpose was to draw and fire, the defendant was authorized to anticipate him and fire first."

14. *Same; plea of insanity; charge to the jury.*—On a trial under an indictment for murder, where the defendant pleads not guilty by reason of insanity, a charge is erroneous and properly refused which instructs the jury that even if they should believe from the evidence that the defendant at the time of the killing had the capacity to distinguish between right and wrong, "yet if the jury should believe from the evidence that defendant was moved to action by the insane impulse controlling his will or judgment, then he is not guilty of the offense charged."

APPEAL from the Circuit Court of Lee.

Tried before the Hon. A. A. EVANS.

The appellant, John P. Cawley, was indicted and tried for the murder of Brady Jones by shooting him with a gun, was convicted of manslaughter in the first degree and sentenced to the penitentiary for ten years.

The defendant was arraigned on October 21, 1901. The judgment entry of said date recites as follows: "The defendant being in open court, attended by his counsel and being duly arraigned according to law

pleads 'not guilty,' and also 'not guilty by reason of insanity.'" The minute entry then recites that October 28, 1901, was set as the day for the trial of the defendant. It then contains the order of the court for the drawing of fifty names to serve on the special venire. The minute entry then proceeds to recite that the State, through its solicitor, moved the court to quash the special venire upon the grounds that certain names were drawn from the jury box by the court at the spring term, 1901, of said circuit court as special jurors for the trial of another murder case, and that after so drawing said special jurors, the court restored said names to the jury box and the same names had been drawn from said box as special jurors in the present case; and that proof of the facts alleged in the motion being made, the court sustained the motion and the special venire was quashed. The minute entry then shows the following proceedings: The court ordered the box containing the names of the jurors to be brought into the court room and drew therefrom fifty names to serve as special jurors for the trial of the defendant. The State moved to quash the special venire so drawn upon the ground that certain persons drawn upon said venire had been drawn and summoned to serve as regular petit jurors for the week in which the trial of the defendant had been set, and that the names of such persons appear both upon the special venire and upon the list of those persons served and summoned as jurors for the week of the court. The facts alleged in this motion being shown to the court, the court sustained the motion and the special venire was quashed. Thereupon the court proceeded to draw from the jury box another list of fifty names to serve on the special venire and ordered the same served upon the defendant.

When the case was called for trial on October 28, the day set for the trial of such case, the defendant moved the court to quash the special venire drawn and summoned in said case, and assigned eight grounds for said motion. The first and second grounds were the ruling of the court in quashing the special venire drawn on October 21. The third, fourth and fifth grounds were that the list of jurors served on the defendant did

not contain the name of "W. D. Graves" nor of the jurors drawn and summoned to serve on the regular petit jury for the week the trial of the defendant was to be had, but that said list of jurors served upon the defendant did contain the name of one "W. D. Garves," who was not drawn and summoned upon either the special venire or the regular petit jury for said week. The sixth and seventh grounds of the motion were not supported by the evidence, and it is unnecessary to set them out. The eighth ground of the motion was that the list of jurors served on the defendant fails to show what persons had been drawn and summoned to serve as petit jurors for the week the defendant was to be tried.

The allegations contained in the first and second grounds of the motion were admitted to be true. In support of the third, fourth and fifth grounds of the motion, it was shown that a mistake had been made in transcribing the name of W. D. Graves, who was drawn as a special juror upon the list served upon the defendant, and his name was written "W. D. Garves." Thereupon the court directed the name of such person to be discarded, and the name of another person forthwith summoned to serve in the same case, and the person so summoned was disposed of in the same manner as if he had been drawn in the first instance. In support of the eighth ground it was shown that the list of jurors served on the defendant did not show who were the jurors drawn and summoned for the week of the court in which the defendant was to be tried, or who were the special jurors drawn for the trial of the case, but that the list of jurors served on the defendant contained the names of the jurors drawn and summoned for the third week of the court, together with the names of the special jurors drawn for the trial of the case. The defendant's motion to quash was overruled, and to this ruling the defendant duly excepted.

The evidence for the State tended to show that as the deceased, Brady Jones, was walking along what is called a plantation road, he met the defendant Cawley; that as Jones saw said Cawley he stoopped and started to run; that thereupon Cawley shot and killed him. It was shown that the plantation road ran between the

house of defendant and one Sylla Griggs; that the distance from Cawley's house to where the shooting occurred was about 200 yards. It was further shown that the killing occurred about 6 o'clock in the morning; that the deceased had been to the house of Sylla Griggs to see her about picking some cotton for him, and was returning from her house when he was shot.

One H. G. Adams, a witness for the State, testified to the location of the road and how it was situated in regard to Cawley's house and to Sylla Grigg's house, and he showed to the jury by a drawing on paper the relative location and distances of the several places about which he had testified. The State then asked the witness Adams the following question: "A person leaving Jones' house and going into the plantation road and thence along said road to where the body of Jones was found, is there any obstruction to prevent such person from being seen from said house?" The defendant objected to this question, because it called for illegal, incompetent and immaterial evidence, and called for the conclusions of the witness. The court overruled the objection, and the defendant duly excepted. The witness answered that there was not. The defendant duly excepted to the court's overruling his motion to exclude this answer of the witness.

The evidence for the defendant tended to show that as he and his son were walking along the plantation road they met Jones, the deceased; that as Jones came toward the defendant the latter told him to stop, but that Jones kept advancing and put his hand in his pocket and moved as if to draw it out, and that thereupon the defendant fired upon him.

The sister of the defendant was introduced as a witness and testified that she was a widow and that Brady Jones had had illicit relations with her daughter, who was unmarried; that the defendant, who was her brother, was her protector, and she had asked him to keep Jones away from her daughter, and that after this request the defendant seemed very much depressed. There was also evidence introduced for the defendant tending to show that after the request was made by the sister of the defendant, he seemed to be unable to talk about anything else except the relations existing between his

niece and the said Jones, and that he seemed to be brooding over it all the time. There was also evidence introduced for the defendant that the deceased had made threats against the defendant. Upon the introduction of one Huguley as a witness, he was asked the following question: "Did you have a conversation with defendant about the deceased several months ago?" Upon the witness answering that he did, he was then asked by the defendant to state the conversation. The witness answered: "Defendant said that Brady Jones had it in for him, and if he, the said Brady Jones, could get defendant out of the way, he could do Sister Sallie as he pleased." The State moved to exclude this answer upon the ground that it was irrelevant, incompetent and immaterial. The court overruled the motion, and the State duly excepted.

During the examination of the defendant as a witness in his own behalf, he was asked the following question: "If the deceased was not in the habit of carrying a pistol?" The State objected to this question upon the ground that it was illegal, irrelevant and incompetent. The court overruled the objection. The defendant then answered: "Yes; I saw him with one on several occasions since February, 1901, sticking out of his pocket." The State moved to exclude the answer of the witness upon the ground that it was illegal, irrelevant and incompetent, and because the deceased had a right to carry a pistol not concealed. This motion was sustained by the court, and the evidence was excluded, and to this ruling the defendant duly excepted.

The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (b.) "If the defendant was free from fault in bringing on the difficulty, and the deceased advanced toward him at the same time drawing his hand from his pocket in such a manner as to indicate to a reasonable mind that his purpose was to draw his pistol and fire upon the defendant, and if the accused was in such close proximity to the deceased as to render it hazardous to attempt flight, then the law would not require the defendant to endanger his safety by attempting flight." (c.) "A rea-

sonable doubt, gentlemen, is a doubt for which a reason can be given." (d.) "If the jury believe from the evidence that defendant committed the act under circumstances which would be criminal or unlawful if he was sane, the verdict should be not guilty, if the killing was an offspring or product of mental disease in the defendant." (e.) "If the defendant did not provoke or bring on the difficulty, and the deceased advanced upon him, drawing his hand from his pocket in such a manner as to indicate to a reasonable mind that his purpose was to draw and fire, the defendant was authorized to anticipate him and fire first." (f.) "If from previous threats made by the deceased and communicated to defendant and from deceased carrying a gun, the defendant was reasonably led to believe that on first meeting one of them would be killed, and if at the time of the meeting when deceased was shot, the deceased advanced upon the defendant, and placed his hand in his pocket in such a manner as to indicate to a reasonable mind that his purpose was to draw a pistol and fire, then the defendant would be authorized to fire upon the deceased first, if his danger would have been increased by retreat." (g.) "If the defendant was not at fault in bringing on the difficulty, and if the defendant from previous acts and threats of the deceased was reasonably led to believe that on first meeting the deceased would attempt to kill him, and if at the time of the fatal meeting, the deceased advanced upon the defendant and placed his hand in his pocket and attempted to draw it in such a manner as to indicate to a reasonable mind that his purpose was to draw a pistol and fire, and if he was in such proximity to the deceased as that retreat would have increased his danger, then the defendant would have been authorized under the law to anticipate him and fire first." (h.) "Even if the jury should believe from the evidence that the defendant at the time of the alleged killing of Brady Jones had the capacity to distinguish between right and wrong, yet if the jury should believe from the evidence that defendant was moved to action by an insane impulse controlling his will or judgment, then he is not guilty of the offense charged."

[Cawley v. The State.]

BARNES & DUKE, for appellant.—The judgment entry shows that a motion was made to quash the venire, and the motion was denied, and it is not shown that at this time the defendant was present in court. It is the undoubted right of the accused to be present in all stages of the prosecution in which any action is to be taken, in reference to which he has the right to be heard by himself or counsel.—*Ex parte Bryan,* 44 Ala. 402; *Sylvester v. State,* 71 Ala. 17.

Under the defendant's plea of insanity, it was competent for him to prove that the defendant was brooding in mind over a condition of affairs at his sister's (Mrs. Taylor's) house, real or imaginary, to such an extent that his mind had become impaired and deranged. It was competent to make this proof by showing his acts and conversations at and prior to the time of the killing.—*McLean v. State,* 16 Ala. 672; *State v. Brinyea,* 5 Ala. 241; *Norris v. State,* 16 Ala. 776; Lawson's Insanity as a Defense to Crime, 797.

In one aspect of the case the defendant set up self-defense, and there was some evidence, abundant evidence, we might say, in support of his plea of self-defense. Then it was competent for the defendant to show by proper evidence that the deceased was in the habit of carrying a pistol..—*Naugher's Case,* 116 Ala. 463; *Wiley's Case,* 99 Ala. 146.

CHAS. G. BROWN, Attorney-General, for the State. The court properly quashed the venire on motion of solicitor.—*Wilkins v. State,* 112 Ala. 55.

It is manifest that the court did not err in sustaining the objection to conversation defendant had with one Huguley. It had no connection with any circumstances brought out by the State and had not the remotest bearing on the question of insanity. It was not introduced for that purpose. It clearly was allowing defendant to make testimony for himself.—*Naugher v. State,* 116 Ala. 463; *Wiley v. State,* 99 Ala. 146.

The charges requested by the State were properly given.—*Evans v. State,* 109 Ala. 13; *Compton v. State,* 110 Ala. 7; *Bell v. State,* 115 Ala. 25; *Linnehan v.*

*State,* 116 Ala. 454; *Stoball v. State,* 116 Ala. 455; *Miller v. State,* 107 Ala. 40.

TYSON, J.—The recitals in the minute entry sufficiently show the presence of the defendant when the several motions to quash the several *venires* were ruled upon by the court. No exception is shown to have been reserved by defendant to the action of the court in quashing the *venires* on motion of the solicitor. As sustaining the correctness of the ruling of the court in this respect, see *Wilkins v. The State,* 112 Ala. 55.

In respect to the refusal of the court to quash the *venire* on defendant's motion, only those grounds of the motion are insisted upon which go to the right of the court to discard the name of one W. D. Graves, who was drawn as a special juror and to order another to be forthwith summoned to supply his place. It was made to appear to the trial court, as shown by the record, that the name of W. D. Graves was drawn from the box as a special juror and that in the list of jurors delivered to defendant, the name was written "W. D. Garves." For the correction of this mistake the court had ample authority under the provisions of section 5007 of the Code, which it followed.

The other grounds of the motion, except the eighth, were not supported by the evidence, and, therefore, there was no error in overruling them. While the facts alleged in the eighth ground were proven, it can avail the defendant nothing, since there is no requirement that the list of jurors served on defendant shall designate the names of those jurors specially drawn and those drawn and summoned for the third week of the court, the names of all being upon the list served upon him.—Code, §§ 5004, 5273.

The record does not contain a copy of the drawing made by witness Adams, which was before the court, showing the relative location and distances of the places named by him. Nor does the evidence in the record disclose affirmatively that Jones, upon leaving his home, did not go into the plantation road and thence along it to the point where his body was found. We cannot, therefore, know, as insisted by appellant's

counsel, that he came to the place where he was killed by a different route and from an opposite direction. Since error must be affirmatively shown to overcome the presumption which must be indulged in favor of the correctness of the rulings of the trial court, and as the question to which an objection was interposed was doubtless propounded by the solicitor for the purpose of showing that the defendant saw Jones, the deceased, as he went along the plantation road from his own house, and pursued him, it was entirely competent and relevant.

Two defenses were relied upon by defendant—one, self-defense, and the other insanity. There was testimony offered by the defendant tending to show, the weight of which was for the jury, that he had been previously to and was at the time of the killing of the deceased, afflicted with a mental disease produced solely by the information imparted to him of a supposed illicit relation between his niece and·the deceased. When insanity is pleaded, the subsequent as well as previous acts and declarations of the defendant are admissible in evidence to show his true mental condition at the moment of the homicide.—*McLean v. The State*, 16 Ala. 672; 1 Mayfield's Dig., 460, § 48.

The declarations of defendant to witness Huguley should not have been excluded.

In view of the testimony tending to establish the defense of self-defense, the court committed an error in excluding the statement of defendant as a witness that deceased was in the habit of carrying a pistol.—*Wiley v. The State*, 99 Ala. 146; *Naugher v. The State*, 116 Ala. 463.

Written charges b, f, and g, refused to defendant, were bad. They assumed as matter of law that the facts postulated created imminent peril to life or limb, thus invading the province of the jury whose duty it was to determine whether the defendant was in imminent peril, actual or apparent.—*Gilmore v. The State*, 126 Ala. 21.

Charge c was condemned in *Avery v. The State.* 124 Ala. 20.

[Thomas v. The State.]

Charge d was properly refused upon the authority of *Maxwell v. The State,* 89 Ala. 150.

Charge e is so obviously defective no comment is necessary.

Charge h is in conflict with the principle often declared by this court, that emotional insanity as a defense "finds no justification or support in our jurisprudence."—*Walker v. The State,* 91 Ala. 76; *Parsons v. The State,* 81 Ala. 577; *Boswell v. The State,* 63 Ala. 307.

For the errors pointed out the judgment must be reversed and the cause remanded.

*Indictment for Murder.*

