200 So. 602

## GEORGE v. STATE.

### 6 Div. 605.

Supreme Court of Alabama.

Feb. 27, 1941.

634

Reuben H. Wright and Ward H. McFarland, both of Tuscaloosa, for appellant.

Thos. S. Lawson, Atty. Gen., and Jas. F. Matthews, Asst. Atty. Gen., for the State.

**LIVINGSTON, Justice.**

The appellant, Arthur T. George, indicted and tried for the murder of his wife, Lela George, was convicted of murder in the first degree and sentenced to the penitentiary for life. The defendant pleaded "not guilty" and "not guilty by reason of insanity." He offered no evidence to disprove the fact that he killed his wife.

The evidence for the State tended to show that defendant killed his wife on July 27, 1938, in Tuscaloosa County, Alabama, by shooting her with a twenty-two rifle. The killing took place about 7:30 in the evening, while the wife was standing on the front porch of her mother's home with one Jim Green. The defendant was standing on the ground some five or six feet from the porch when he fired the fatal shot. Only one shot was fired. The bullet entered the body of Mrs. George under the right shoulder blade and came out on the left side of her chest. It also struck the hat worn by Jim Green, leaving a mark on the under side of the brim. Jim Green ran immediately after the shot was fired. Mrs. George died shortly after being shot.

Witnesses for the State testified that the defendant, when arrested, admitted firing the shot that killed his wife, and also admitted telling his wife shortly before the killing that if she would not live with him she could not live with anybody else.

The testimony for the defendant tended to show that he was about twenty-nine years of age and uneducated. That he could neither read nor write. That defendant and his wife had two small sons of the ages of four and seven years. That he and she had been living separate and apart for two or three weeks at the time she was killed; that they had separated for short intervals on other occasions.

Several witnesses testified that during the two or three weeks next preceding the killing, defendant's wife was frequently seen in the company of State's witness Jim Green. Others testified that numerous times she went to the place where Jim Green worked, a sawmill, and met him as he got off from work, and they went off together through the woods toward Mrs. George's home. They were seen together at a ball game, at a party, at church from which they left together before services were over. They were seen going into the woods together and coming out of the woods on several occasions, all of which was known to defendant. That on the day Mrs. George was killed she had been with Jim Green at her mother's home from around 3:30 in the afternoon until the time she was killed.

The defendant testified, in part, as follows: "I walked over there (home of Mrs. George's mother, Mrs. Newell) and I carried my gun with me and set it in the stall of the barn so that I would have it to go back with that night. The barn where I left the gun was around a one hundred yards from the house. I went around in front of the house, and when I got around in front of the house, I seen my wife and

Jim Green standing there on the porch, and he had his left arm around her waist, and he had his right arm down between him and her; it was kind of dark, not much, you could see good enough to tell it was him and her; there was nobody else on the porch besides Jim Green and my wife; they were the onliest ones there; I said he had his left arm around her waist; I did not have my gun then; I turned and went back to the barn and got my gun, and walked back up there to the porch on the front side of the house, and they were still on the front porch, still standing where they were before when I went there the first time, and I said, 'what are you doing there?' I was in the yard and I did not go up on the porch. I figure I was five or six feet from the front porch and some-where around four feet from the steps; when I said that he still had his left arm around her waist, and when I said what are you doing there, he threw his hand on his hip pocket to get his gun and that throwed her around between him and me, and I shot, I was shooting at Jim Green, and I shot only one time with that rifle."

We deem the foregoing recitals a suffi-cient statement of the salient facts of the case.

In as much as this cause must be re-versed and remanded, we will discuss only those objections, exceptions and assign-ments of error necessitating a reversal, to-gether with those likely to arise on an-other trial.

We deem it proper to state the rules of law applicable to the admissibility and relevancy of evidence tending to prove or disprove insanity of defendant, and the form of questions to elicit such evidence.

■ In this State on the question of insanity vel non, witnesses, whether ex-pert or non-expert, may express their opin-ion as to the sanity or insanity of defend-ant on trial for crime. Ford v. State, 71 Ala. 385; Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am.St.Rep. 33; Norris v. State, 16 Ala. 776; Caddell v. State, 129 Ala. 57, 65, 30 So. 76; Fountain v. Brown, 38 Ala. 72; Powell v. State, 25 Ala. 21; Moore v. Spier, 80 Ala. 129; Florey's Ex'rs v. Florey, 24 Ala. 241; Gunter v. State, 83 Ala. 96, 3 So. 600; Page v. State, 61 Ala. 16; Parrish v. State, 139 Ala. 16, 36 So. 1012.

■ Whether expert or non-expert, the witness must first be shown to be com-petent or qualified to give an opinion as to the sanity or insanity of the party inquired of. This question of competency or quali-fication of the witness is one for the court, and not for the jury, and its determina-tion will not be revised unless it clearly appears to have been erroneous. People v. McCarthy, 115 Cal. 255, 46 P. 1073; note on page 733 of 38 L.R.A.; Parrish v. State, supra. An expert witness may give an opinion as to the sanity or insanity of an individual, based solely upon an hypo-thetical question, without personal know-ledge of or acquaintance with the individu-al inquired of. Gunter v. State, 83 Ala. 96, 3 So. 600; Burt v. State, 38 Tex.Cr.R. 397, 40 S.W. 1000, 43 S.W. 344, 39 L.R.A. 305, 330, and note; Parrish v. State, 139 Ala. 16, 36 So. 1012.

■■ A non-expert witness cannot give an opinion as to the sanity or insanity of the individual inquired of based in whole or in part upon an abstract hypothetical ques-tion, but must base his opinion solely upon his own personal knowledge, observation, acquaintance, experience, etc., with the in-dividual inquired of. Roberts v. Trawick, 13 Ala. 68; Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am.St.Rep. 33; Bowl-ing v. Bowling, 8 Ala. 358; Parrish v. State, supra. Non-expert witnesses, to give an opinion as to insanity of a party, must first state the facts claimed to show or indicate an abnormal condition of the mind; but such witnesses may give an opin-ion that the person inquired of was sane by first denying generally the existence of any facts showing an abnormal or un-natural state of mind, and without speci-fying any of such facts. Caddell v. State, 129 Ala. 57, 65, 30 So. 76; Dominick v. Randolph, 124 Ala. 557, 27 So. 481; Par-sons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193; Parrish v. State, supra.

■ The hypothetical question pro-pounded to an expert witness should em-brace substantially all the facts where there is no dispute as to the facts upon the question of insanity. Parrish v. State, su-pra. If the evidence is in conflict as to the facts tending to show insanity, the hypothetical question may and should prop-erly embrace only the facts tending to sup-port the particular theory of the respective parties, and the opposite party, if desir-able on cross-examination, may propound questions to him embracing the facts which tend to support his theory. Par-rish v. State, supra. The hypothetical

question to an expert witness should not contain matter unsupported by a tendency of the evidence. However, in this regard, technical accuracy is not required. It is for the jury to scrutinize the evidence and to determine what part of the question is true or supported by the evidence and what is not, and the adverse party may ask for instructions, that the jury do not accept the facts as true, but that they should determine what facts are in evidence, and that they might disregard the opinion of the expert if not based on facts in evidence. Parrish v. State, supra.

Expert witnesses may be cross-examined and their opinion obtained based on other states of facts assumed by the party examining them to have been proved upon a hypothetical case; and they may be cross-examined on purely imaginary and abstract questions. Such questions are not only permissible in order to get the opinion of the expert witness upon all possible theories of the case, but they are allowable to test the value and accuracy of the opinion of the witness himself. Clark v. State, 12 Ohio 483, 40 Am.Dec. 481; People v. Sutton, 73 Cal. 243, 15 P. 86; Parrish v. State, supra.

The opinion of expert witnesses as to insanity are not conclusive upon the jury; they are to be weighed like other evidence, such evidence being intended to aid the jury, and its value depending largely upon the intelligence, experience, honesty and impartiality of the witness. The jury may reject it all, though it is without conflict. McAllister v. State, 17 Ala. 434, 52 Am.Dec. 180; Parrish v. State, 139 Ala. 16, 36 So. 1012.

Evidence to show insanity is not confined to evidence of the mental condition of the accused at the instant of the act, though whatever facts are adduced must tend to show the mental state at that moment. By outward acts we read the thoughts, the motives and the emotions, and as one's acts conform to the practices of people of sound mind or contrast therewith we form our judgment of sanity or insanity. Evidence is competent to prove conduct and language at various times and places indicating an unhealthy mental condition, and the more extensive the view the safer is the determination reached.

This Court has held therefore that the issue of insanity gives much latitude to the defendant and the State to introduce evidence of defendant's acts, declarations and conduct prior and subsequent to the alleged crime. Anderson v. State, 209 Ala. 36, 95 So. 171; Birchfield v. State, 217 Ala. 225, 115 So. 297; Deloney v. State, 225 Ala. 65, 142 So. 432; Cawley v. State, 133 Ala. 128, 32 So. 227; McLean v. State, 16 Ala. 672.

As touching the question of defendant's insanity, his attempt at suicide subsequent to the homicide was admissible. However, we do not think the trial court erred to a reversal in this case by sustaining an objection to a question to the defendant as to whether he had attempted to kill himself in jail after his arrest. Defendant had the full benefit of this proof from other witnesses, and was allowed to exhibit to the jury a scar on his arm where he had cut an artery with a razor blade, and was allowed to testify that he had bled all night. Dukes v. State, 210 Ala. 442, 98 So. 368; Milligan v. State, 208 Ala. 223, 94 So. 169; Houston v. State, 203 Ala. 261, 82 So. 503; Locklayer v. State, 209 Ala. 605, 96 So. 759; Erwin v. State, 19 Ala.App. 658, 100 So. 79.

Defendant's non-expert witnesses A. B. Griffin, Tom Vining and James Sellers were asked, in substance, for their opinion as to the sanity or insanity of defendant. The State's objections to this line of testimony from these witnesses was sustained. As stated above, the question as to the competency of the witness, whether expert or non-expert, to give an opinion as to the sanity or insanity of the party inquired of, is a question for the court, and not for the jury. As to this question, its decision as to competency will not be revised unless it clearly appears to have been erroneous. Authorities, supra. Non-expert witnesses, to give an opinion as to insanity of a party, must first state the facts claimed to show or indicate an abnormal condition of the mind. We cannot say that the trial court erred in holding that this prerequisite was not met in the case of witnesses Griffin, Vining and Sellers. Authorities, supra.

Defendant testified, "I saw James Albert on the afternoon before the killing about three or four o'clock. I saw him in front of his home." Counsel for defendant then propounded the following questions to him: "Tell what all you told him that afternoon? What did you say to Mr. James Albert about two or three o'clock that afternoon before your wife

was shot?" The objection to the questions by the State was sustained. The defendant then offered to prove that he "told Mr. James Albert at the time and place inquired about that he did not know what to do, that he was disturbed in his mind because Jim Green had taken his wife away from him and broken up his home and that he had two little children, and he was just worried to death because his home was broken up."

Under the rules hereinabove set forth this testimony was admissible. Cawley v. State, 133 Ala. 128, 32 So. 227. The fact that the defendant himself offered to testify as to statements, and the fact that they may be in the nature of self-serving declarations, are matters touching their credibility rather than admissibility.

However, the defendant cannot be permitted to testify to his own mental unsoundness, and the State's objection to this line of testimony was properly sustained. O'Connell v. Beecher, 21 App. Div. 298, 47 N.Y.S. 334.

The trial court was not in error in admitting the following testimony of Mrs. Newell, the mother of Mrs. George, and at whose home Mrs. George was killed: "After he shot her, she swooned in my arms, saying, 'Lord 'a mercy, Arthur has shot me.'" All the circumstances and conditions surrounding the actual killing are matters pertinent to the issues involved, and the statement by the deceased in this case was part of the res gestae. We find no error in admitting this line of evidence.

Section 9507 of the Code of 1923 reads as follows: "Charge of court.—The court may state to the jury the law of the case, and may also state the evidence when the same is disputed, but shall not charge upon the effect of the testimony, unless required to do so by one of the parties."

Under this section, the trial court should be careful to so frame its charge as to submit questions of fact solely to the determination of the jury, and should never invade the province of the jury of its own motion. The court should so frame its oral charge as not to subject it to the criticism of it being the court's conclusion from facts in dispute. The court in a criminal case has no authority to take any material question of fact from the jury where there is any tendency in the evidence to support it.

Here, the court charged the jury as follows: "I charge you, gentlemen of the jury, that there is no evidence of adultery in this case, or an act of adultery as regarded by law." Under defendant's plea of insanity, it was proper to prove the adultery of the defendant's wife, and this proof may be supplied by circumstantial evidence. In the light of the testimony touching the relationship between defendant's wife and Jim Green, the question of the wife's adultery was for the jury, to whom is committed the important and exclusive right of weighing the evidence. The foregoing charge is a clear violation of this salutary rule, and must work a reversal of this cause.

Written charges numbered 10, 15, 17 and 18 were properly refused to defendant for the reasons they were abstract and inapt. There is no evidence to support the theory upon which they were based.

Written charges numbered 19, 20, 21 and 22 are general charges as to the four degrees of homicide, and were properly refused.

For the errors above pointed out, the judgment is reversed and the cause remanded.

Reversed and remanded.

BOULDIN and FOSTER, JJ., concur.

GARDNER, C.J., concurs in the result.