HORNSBY, Chief Justice.
The petitioner was found guilty of the murder of his estranged wife’s stepfather, the attempted murder of his wife’s mother, and the kidnapping of his estranged wife. The record shows that the evidence concerning the events of the morning of December 11, 1986, is conflicting. The evidence does indicate, however, that the defendant’s wife, Karen Anthony; her mother, Linda Ballinger; and her stepfather, Eugene Ballinger, were on their way to a divorce hearing involving Karen and the defendant. The state’s evidence indicates, through the testimony of Karen Anthony, that the truck in which the three were riding was forced off the road by the defendant. The defendant’s testimony indicates that Mr. Ballinger sideswiped the defendant’s automobile when the defendant attempted to get Mr. Ballinger to pull over so that the defendant could talk to Karen.
The evidence shows that the stepfather got out of his truck and went to the driver’s side of the defendant’s car. The record reveals conflicting testimony as to the remaining events.
*566 The defendant’s wife testified that, after a brief altercation, she observed the defendant aiming and shooting a shotgun at her stepfather, who, she said, was on the ground near the driver’s side of the defendant’s car. She also testified that she saw the defendant shoot her mother, as her mother was running from the scene. She testified that the defendant then came to the truck and kidnapped her, taking her to Florida. She said that they stopped briefly at an abandoned house in Florida; that the defendant raped her there; and that they then proceeded to Mobile, where they were ultimately apprehended by law enforcement agencies.
The defendant’s testimony, as well as the story he had previously told the court-appointed psychologist, indicates that the defendant remembered little of the events that transpired after the gunshot that killed Eugene Ballinger. The defendant asserts that Mr. Ballinger came to the driver’s side of the car while the defendant was attempting to get out of the car. Each time he attempted to get out, the defendant said, Mr. Ballinger would hit him. The defendant said that he finally got out of the car and that Mr. Ballinger then tried to choke him.
The defendant further testified that he threw off Mr. Ballinger’s hands, causing Mr. Ballinger to lose his balance and fall to the ground; that the defendant grabbed a shotgun that was on the back seat of the car and pointed it at Mr. Ballinger; and that when he turned to look for Karen, Mr. Ballinger tugged on the gun and it went off.
The defendant was indicted on 13 various counts of capital murder, attempted murder, first degree robbery, and first degree kidnapping. He pleaded not guilty and, just before trial, not guilty by reason of insanity. The defendant was convicted of murder, attempted murder, and first degree kidnapping. He was sentenced to life imprisonment on both the murder and the attempted murder convictions. He was sentenced to 15 years’ imprisonment on the kidnapping conviction. These sentences were to run concurrently.
ISSUES
The defendant claims that during his trial he was not allowed to properly question witnesses who were going to testify concerning his wife’s alleged infidelity, which he claimed affected his mental state. In his petition, the defendant makes three arguments: 1) that the trial court improperly limited evidence of his mental capacity; 2) that the trial court improperly admitted certain photographic evidence; and 3) that the indictment was void because of a conflict of interest of the district attorney at the time he presented the case to the grand jury.
We granted the defendant’s petition for writ of certiorari to determine whether the trial court impermissibly restricted the defendant’s insanity defense by refusing to permit him to present evidence that his wife had committed adultery. Because we reverse on this issue, the remaining issues raised by the defendant will not be addressed.
Karen Anthony testified as a State’s witness concerning the facts noted above. On cross-examination by defense counsel, she was asked whether she had had sexual relations with four named individuals and others during her marriage to petitioner. The State made no objection to this question, and she denied engaging in such conduct. The defendant called as witnesses these particular individuals when presenting his case and offered to show that each had had sexual relations with the defendant’s wife. The State objected each time, and the trial court sustained the objections.
ADMISSIBILITY OF EVIDENCE OF MENTAL INCAPACITY
Alabama’s insanity defense is set out at Ala.Code (1975), § 13A-3-l(a). The defendant has the burden of showing that “as a result of severe mental disease or defect, [he] was unable to appreciate the nature and quality or wrongfulness of his acts.” Id.
Generally, in Alabama, wide latitude is allowed both the defendant and the state *567 in inquiries into a person’s mental state when the issue of sanity is presented. Watts v. State, 282 Ala. 245, 210 So.2d 805 (1968); see also 1 Wharton, Criminal Evidence, § 162, p. 653 (14th ed. 1985); J. McElroy, Relevancy of Evidence in Alabama Upon An Issue of A Person’s Mental Capacity, 4 Ala.Law. 384, 396 (1943). A requirement of the defense, however, is that the acts, declarations, and conduct inquired about must have a tendency to shed light on the person’s state of mind when the act for which he is being tried was committed. Id. Further, where insanity is relied upon as a defense, every act of the accused’s life that throws some light on the issue is relevant. Nichols v. State, 276 Ala. 209, 160 So.2d 619 (1964). See also, Barbour v. State, 262 Ala. 297, 78 So.2d 328 (1955); Hall v. State, 248 Ala. 33, 26 So.2d 566 (1946); Reedy v. State, 246 Ala. 363, 20 So.2d 528 (1945).
As stated by Professor Wigmore:
“The first and fundamental rule, then, [is] that any and all conduct of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue. 'Upon this I believe that no difference of opinion will be found to exist,’ said Mr. Justice Patteson ..., ‘as to the principle on which such evidence is admissible: Every act of the party’s life is relevant to the issue.’ There can be no escape from this consequence. There is no distinction in kind (whatever there may be in degree) between one or another piece of conduct as evidence to be considered; some inference is always possible.”
2 Wigmore on Evidence, § 221, p. 9 (1979) (some emphasis original; other emphasis added). Further, it has been written:
“[W]hen conduct is looked to as an index of the rationality of mental operations, and the facts upon which the conduct was based being essential to forming a standard of judgment, the acts and communications of third persons may become relevant — not as in themselves having value, but as the raw material (as it were) for the mental manufacture of the person in question....
“Accordingly, when any act of his is found, preceded by third persons’ acts or communications, the latter are essential to a judgment upon the former. The only requirements to be insisted upon, as necessary assumptions, are that the other persons’ acts or communications have come to the knowledge of the person in question, and that some act or treatment of them by him has ensued. ...”
2 Wigmore on Evidence, § 228, p. 12-13 (1979) (emphasis in original).
Although liberal proof of collateral events is allowed both the state and the defendant when the insanity defense is used, it is within the discretion of the trial court to limit the scope of examination within due bounds. Mullis v. State, 258 Ala. 309, 62 So.2d 451 (1953); Smith v. State, 257 Ala. 47, 57 So.2d 513 (1952); Eldridge v. State, 247 Ala. 153, 22 So.2d 713 (1945).
A review of Alabama cases reveals that the admissibility of communications by third parties to a defendant regarding his spouse’s infidelity has previously been the subject of discussion. In George v. State, 240 Ala. 632, 638, 200 So. 602 (1941), this Court reversed a murder conviction of a man who shot his wife after confronting her and a Mr. Green while the two were standing on her mother’s front porch. The trial court charged the jury that there was no evidence of adultery. This Court reversed, noting the testimony of several witnesses that the defendant’s wife had been frequently seen in public in the company of Mr. Green, “all of which was known to the defendant.” Id., 240 Ala. at 635, 200 So. at 605. This Court stated that “[u]nder defendant’s plea of insanity, it was proper to prove the adultery of the defendant’s wife, and this proof may be supplied by circumstantial evidence.” 240 Ala. at 638, 200 So. at 607. See also Naugher v. State, 241 Ala. 91, 94, 1 So.2d 294 (1941) (“the defendant had been told by others that his wife and [the deceased] were going together, *568 drinking together, and had spent the night together”); Ragland v. State, 125 Ala. 12, 28, 27 So. 983 (1899) (“[i]t is equally clear, that the information received at the hour it was, by defendant, through his daughter’s letter, whether she told the truth or not,— that deceased had seduced her, — was competent evidence to be considered with all the other evidence in the case, as bearing on the plea of insanity”); Guinn v. State, 22 Ala.App. 331, 332, 115 So. 417 (1928) (“[t]he inquiry here to be determined is the sanity of defendant at the time of the homicide, and the testimony as to what the deceased did to ... the defendant’s daughter, is relevant on the issue of defendant’s plea of insanity only in so far as such facts and circumstances were communicated to defendant prior to the homicide”); Winford v. State, 16 Ala.App. 143, 144, 75 So. 819 (1917) (“[i]n view of the evidence tending to show the insanity of the defendant at the time of the fatal shooting, we think that evidence of the condition of his family, the desertion by. his wife, and the association of his wife with her paramour, was admissible, as bearing on the question of sanity”); but see Wilkes v. State, 215 Ala. 428, 429, 110 So. 908 (1927) (defendant’s acceptance of $1000 in satisfaction of deceased’s alienation of wife’s affections tended to negate defendant’s insanity defense).
In Barnes v. State, 31 Ala.App. 187, 190, 14 So.2d 242 (1943), cert. denied, 244 Ala. 597, 14 So.2d 246 (1943), the Alabama Court of Appeals held that evidence that the accused, shortly before the alleged crime, had acquired knowledge of his wife’s infidelity should have been presented to the jury. That court stated:
“It is generally held that evidence of information conveyed to the defendant by others, or obtained through his personal observation shortly before the act, is admissible if it is of such a nature as naturally and reasonably to affect his mental poise to an extent that it would render him irresponsible while acting under its influence.”
31 Ala.App. at 190, 14 So.2d at 245, citing 1 Wharton’s Criminal Evidence, p. 432, §318 (11th ed.); see also 2 Wigmore on
Evidence, pp. 8-9, § 227, and pp. 20-21, § 231 (1979). Further, that court stated:
“The only limitation upon the admissibility of such evidence is that a proper predicate for its admission be laid by the introduction of other evidence tending to show insanity.”
31 Ala.App. at 190, 14 So.2d at 245.
Thus, in Barnes, proof tending to show defendant’s insanity at the time of the act for which he was being prosecuted was a prerequisite to the admissibility of evidence that he had acquired knowledge or information of the infidelity of his wife. Again, in Hunter v. State, 491 So.2d 1079 (Ala.Crim.App.1986), the Court of Criminal Appeals stated the following:
“ ‘Matters observed by the subject-person prior to the time in issue, including communications to him, which are calculated to cause him shock or mental disturbance are admissible as tending to show mental incapacity. The only qualification upon the admission of such evidence is that the matter or communication must be shown to have been perceived or heard by the subject-person and must be shown relevant to have naturally and reasonably affected his mental poise to an extent as to have rendered him legally irresponsible while acting under its influence.’ McElroy’s at § 61.01(10).
[[Image here]]
“‘... [CJircumstances calculated to induce this mental condition may always be admitted to evidence the probability of such affection; the only limitation is that the circumstance be in itself capable in some degree of producing such an effect, that it came to the person's knowledge, and that some further foundation for probability be laid by other evidence that there was a diseased mental condition.’ 2 Wigmore on Evidence, § 231, p. 20. Eldridge v. State, 247 Ala. 153, 154, 22 So.2d 713 (1945) (emphasis in Eldridge). “See also McElroy’s § 61.01(5) (‘Some decisions have held that the trial court has the discretion to admit or exclude a particular fact, offered to show mental capacity, because of its remoteness. How *569 ever, ... it is the safer and better practice to exercise such discretion by admitting any fact which tends in reason to prove such person’s mental capacity.’)
[[Image here]]
Id. at 1082. The application of the foregoing authority to the case at hand indicates that the evidence of the defendant’s wife’s infidelity would be admissible if there was evidence to show that the defendant had heard or perceived the evidence of her actions. This evidence would also be admissible to impeach the testimony of Karen Anthony. The evidence of her possible infidelity and its effect on the defendant is material to this case and would not merely serve to impeach her testimony on a collateral matter.
The defendant and his psychologist testified that the defendant had knowledge of his wife’s sexual misconduct. In the opinion of the psychologist, in light of the stress the defendant was under and the impact of the shooting, it was possible that the defendant “may not have known right from wrong; and it’s also possible that even if he did he couldn’t control himself because he was totally out of character with himself.” The psychologist testified further that the defendant possibly suffered a “brief reactive psychosis” that caused him to block out the next 10 to 12 hours of his actions.
During the defendant’s case, after the State objected to the evidence of Karen’s infidelity, the defendant’s counsel argued to the trial court the following:
“Judge, further, if it please the court, the defendant’s plea ... is not guilty by reason of insanity, we offer to prove that this insanity was brought about by acts of this witness Karen [Anthony]. The material part of the proof would be the adulterous relationships of this witness of the State, Karen Anthony. If we are not allowed to show what caused this man ⅛ mind to become so defective that it caused him to go into an insane condition, then we are being denied our defense of insanity on the part of this defendant....

“I’m saying that we are trying to prove to this jury the circumstances and the history, the very history of this defendant’s mental state that led him into a state of insanity to do what he’s alleged to have done.”

Additional testimony by defense witnesses showed that the defendant had been extremely disturbed by his marital situation. Several witnesses testified to the defendant’s crying for long periods, to his being depressed, and to his generally poor state of mind. Under these circumstances, and given the authority permitting liberal proof of events affecting the defendant’s sanity, we conclude that it was error for the trial court to deny the defendant the ability to show his knowledge of his wife’s infidelities and to show those infidelities as the cause of his state of mind.
The defendant’s conviction is hereby reversed and this case is remanded for the Court of Criminal Appeals to order a new trial consistent with this opinion.
REVERSED AND REMANDED.
JONES, ALMON, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.