# Western Union Tel. Co. *v.* Favish.

### Failure to Deliver Telegram.

(Decided February 3, 1916. 71 South. 183.)

1. Telegraphs and Telephones; Change in Words; Liability.—Where a telegraph company in transmitting a message changed the wording so as to induce the addressee to believe that his wife, instead of her father, had been operated on, it was guilty of a breach of contract, and liable at least in nominal damages.

2. Same; Transmission; Duty.—A telegraph company is bound to exercise due care and skill to transmit and deliver messages with substantial accuracy.

3. Same; Damages; Jury Question.—Where the telegram as filed read "Papa operated on" and it was delivered so as to read "Have operated on"

[Western Union Tel. Co. v. Favish.]

the court properly submitted to the jury the question whether addressee could reasonably have concluded from the message as delivered, that his wife had been subjected to a surgical operation, especially where it appeared that she had not entirely recovered from an operation previously performed.

4. **Same; Evidence.**—In such a case it was competent to show that the sender wife of the addressee had not entirely recovered from an operation performed sometime before.

5. **Same; Tort; Damages.**—Where the addressee could reasonably conclude from the message as delivered to him that his wife instead of her father had been subjected to a surgical operation, the expense of a prompt journey made by him to be with her is recoverable as a part of the damages under a count of the complaint, stating a cause of action in tort.

6. **Negligence; Proximate Cause.**—A person guilty of negligence is held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which did in fact exist, whether they could have been ascertained by reasonable diligence or not, would have thought reasonably possible to follow, if it had occurred to his mind at the time of his negligent act.

7. **Telegraphs and Telephones; Transmission; Change; Damages.**—Where the addressee of a telegram was induced by the change in the message to believe that his wife and not her father had been operated on, the action of the addressee in undertaking a trip so as to be with his wife, was a consequence of the breach of the contract to correctly transmit the message which was within the contemplation of the contracting parties even though the precise happening which followed the breach might not have been foreseen.

8. **Same.**—In such an action where the cause of action was set forth in two counts, one ex delicto, and one ex contractu, the damages recoverable included not only the expense of the trip so undertaken in consequence of the change, but also the cost of the message and the value of the time lost by the addressee in making the trip.

9. **Same; Law Governing.**—A contract made in Alabama to transmit a message and deliver the same in Illinois was presumably an Alabama contract, controlled, in respect to the consequences of its breach, by the laws of Alabama; hence, damages for mental distress unaccompanied by physical injury were recoverable, notwithstanding they would not have been recoverable under the laws of Illinois.

10. **Damages; Objection.**—The question of the recoverability of elements of damages claimed are properly raised by objections to evidence, or by instruction, or by motion to strike, rather than by plea or demurrer.

11. **Contracts; Law Governing.**—Ordinarily a contract is governed as to its nature, obligation, validity and interpretation by the law of the place where it is made, unless the parties have in view some other law, or unless it is to be wholly performed in some other state, in which case the law of the place of performance, or the law which both parties had in mind must govern.

12. **Torts; Law Governing.**—The measure and element of a recovery of damages for a tort is that prescribed by the law of the place where the tort is committed.

13. **Trial; Reception of Evidence; Objection.**—Where the action was for damages for the incorrect transmission of a message, and the complaint

contained two counts, one ex delicto and the other ex contractu, and a deposition was offered without any specification of its purpose, it being admissible under the ex delicto, but not under the count ex contractu, its exclusion on a general objection was not ground for a reversal; the rule is that where evidence admissible for one or more purposes is offered without a restriction to the purpose to which it is admissible, and the objection interposed is general, the judgment will not be reversed whether the court sustains or overrules the objection.

14. **Telegraphs and Telephones; Transmission; Instruction.**—Where the complaint contained two counts, one ex contractu, and the other ex delicto, and it appeared that damages for mental distress, though recoverable under one count, and not recoverable under the other, error cannot be predicated upon the refusal of instructions which failed to recognize this distinction.

15. **Same.**—In this case the giving of an instruction that plaintiff testified that he derived from the message that his wife had been operated on, invaded the province of the jury, and required a reversal where it appeared that plaintiff did not so testify.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES W. FERGUSON.

Action by E. W. Favish against the Western Union Telegraph Company for damages for a failure to deliver a telegram in the words in which it was written and delivered to them. Judgment for plaintiff and defendant appeals. Reversed and remanded.

(Transferred from the Court of Appeals under Acts 1911, p. 449.)

FORNEY JOHNSTON, and W. R. C. COCKE, for appellant. SAMUEL B. STERN, for appellee.

McCLELLAN, J.— (1-4)—The wife of the appellee (plaintiff below) transmitted by local telephone to an agent of the appellant at Birmingham, Ala., the following message ardressed to the plaintiff at a certain street number in Chicago, Ill.: "Reasons for not writing *papa* operated on Monday night. Doing as well as can be expected."

The only signature directed to be affixed to the message was the name Helen. Aside from a presently unimportant mistake in the initial letter of the surname of the addressee, the words of the message were understood and transcribed in the appellant's Birmingham office, and therefrom sent to its Chicago office, just as they were communited by the wife through the telephone. After the message was received in an office of the appellant located in Chicago, and before the delivery of the message to the appellee, its words were changed to these: "Reasons

for not writing have (substituting the word *have* for *papa*) oper-
ated on Monday night. Doing as well as can be expected."

It is manifest that such a change in the words of the message
wrought a breach of the contract and a negligent breach of duty;
and that for either an action could be maintained by the party
injured and aggrieved—the least damages awardable being nomi-
nal. It is the duty of such agencies to exercise due care and skill
to transmit and deliver telegraphic messages with substantial
accuracy.—Joyce on Electricity, § 733. This duty and obligation
was breached in this instance. If, as there was evidence tending
to show, the message was sent by appellee's authorized agent,
and the jury so concluded, the appellee was entitled to the gen-
eral affirmative charge on that condition, So, the only question
necessary to be considered on this appeal relates to the matter of
damages recoverable. On the evidence in this record, it must
be held: The message having been communicated by telephone
to a representative of the appellant in its Birmingham office, and
there accepted by its agent for transmission and delivery, and
the contract there and then made not having bound the plaintiff
by any special stipulations or limitations that might have been
competently incorporated in the contract, there is not in the case
any basis for contentions that could only be predicated of special
stipulations or limitations entering into the contract. The court
below appropriately submitted to the jury the inquiry, raised by
the wording of the message as it was delivered to the addressee
in Chicago, whether it could have been reasonably concluded
from the words of the message, as delivered to the appellee, that
the person, indicated by the signature to the message, had been
subjected to a surgical operation. Besides, there was evidence—
in addition to the implications afforded by the words of the mes-
sage as delivered to the appellee—to the effect that the appellee's
wife had not entirely recovered from an operation performed
some time before, thus, quite naturally it may have been found
by the jury, rendering more apt the adoption of the interpreta-
tion of the message which accorded with the possibility of a
recurrence, during the husband's absence, of the necessity for
another operation. There was no error in allowing evidence to
the indicated effect; and there was no error in submitting the
stated inquiry to the jury's determination.

The message was delivered to appellee about 6:30 p. m. He
interpreted the message as referring to an operation performed

on his wife, and within about two hours he had taken the train for Birmingham, where he arrived the next afternoon to find, as the original of the message stated, that an operation had been performed on his wife's father, and not on his wife.

(5, 6) The cause of action is set forth in two counts. The first count is ex delicto, for the breach of duty arising out of the relation and obligations made by the contract; and the second count is ex contracutu, for the breach of the contract.—*W. U. Tel. Co. v. Krichbaum,* 132 Ala. 535, 31 South. 607. The elements of damages claimed in both the counts are substantially the same. They include expenses of the trip to and from Birmingham, from Chicago; loss of time from his business; mental pain and anguish; and the loss of the price paid for the transmission and the delivery of the message. So far as the first count, which is in tort, is concerned, it is clear that the recoverability of expenses claimed depends upon the response to this contingent inquiry; if the message as delivered to the addressee was found by the jury to be reasonably susceptible of the interpretation accorded it by the addressee, was the prompt trip of the appellee to Birmingham a proximate consequence of the negligently caused change in the wording of the message? The addressee had the right to assume that no breach of contractual obligation or negligent act or omission of the appellant had intervened to change the words of the message, and, if the words in the message, as delivered to the addressee, reasonably admitted of the interpretation given them by this addressee, our opinion is that a journey to Birmingham was of the damnifying consequences for which the appellant is responsible. The governing rule, in actions ex delicto, is thus stated in *Armstrong v. Montgomery St. Ry. Co.,* 123 Ala. 233, 249, 250, 26 South. 349, 354: "The logical rule in this connection, the rule of common sense and human experience as well (if indeed there can be a difference between a logical doctrine and one of common sense and experience, as some authorities appear to hold), is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind,"—*Briggs v. B. R., L. & P. Co.,* 188 Ala. 262, 66 South. 95.

It is the ordinary, the normal, man the law must contemplate when standards of conduct, or the probability of action, or the effect of a wrong, are to be considered. When an absent husband is advised, especially without previous warning, that his wife has been submitted to a surgical operation, it is most natural that he should, if practicable, immediately proceed to her bedside. The converse would be highly abnormal and unnatural. This generally known expression of a human characteristic or the probability of such action must enter into the inquiry stated. The message as delivered to the addressee (under the interpretation he put upon it) gave evidence of the fact of the performance of a surgical operation—a matter ever, unless fully explained, of serious import to those nearly related to the subject of the operation; and a natural normal consequence of such advice is to inflict mental distress on a husband. Under the established doctrine above quoted from the *Armstrong Case,* the range of responsibility and accountability of the negligent party is not restricted by the absence of knowledge of the negligent party that "Helen" was the appellee's wife, or the fact that the appellee would in fact, or would probably, proceed to Birmingham in consequence of the information the (erroneous) message bore to him, under his interpretation of its words. The consequences for which there is responsibility and accountability are such as would occur to the mind of a normal, prudent, and experienced man, advised of all the circumstances. If otherwise entitled to recover, the trip to and from Birmingham and the expenses thereof were of the consequences proximately resulting from the negligent change of the message, and the plaintiff was due to be reimbursed for the reasonable expenditure made by him on that account.

(7-10) Like considerations lead to the conclusion that the action of the appellee in going at once to Birmingham was a consequence of the breach of the contract (declared on the second count) wrought by the change of the words of the message, and was a consequence within the contemplation of the parties in making the contract, even though the precise happenings which followed from the breach may not have been anticipated or foreseen.—*W. U. Tel. Co. v. Crumpton,* 138 Ala. 632, 643, 36 South. 517. The cost of the message and the value of the time lost by plaintiff in making the journey to and from Birmingham are likewise within the elements of recoverable damage under

both counts, if the plaintiff was otherwise found to be entitled to recover. The contract for the transmission and delivery of this message was made in the state of Alabama and was to be partly performed in the state of Alabama and in the state of Illinois, as well as in other intervening states through which the lines of this telegraph company extended. The complete performance of the contract could not be accomplished outside of the state of Illinois, any more than without partial service to that ultimate end in Alabama, and other intervening states. So the contract assigns itself to the class of contracts, the performance of which requires service or action in the state where the contract was made and in other states; all with the ultimate object of completed performance in a state other than that in which the contract was made. The appellant's theory was that since damages for mental suffering were not recoverable under the law prevailing in the state of Illinois, unless physical hurt or injury attended the wrong suffered—a condition not present in this instance—the appellee was not entitled to recover in the courts of Alabama for any mental distress occasioned by or resulting from the alteration made in the message. The question thus made presents the inquiry: By what law—that of Alabama or that of Illinois—is the right vel non of this plaintiff to recover damages for mental suffering, without physical hurt or injury, to be determined? The court below refused to the defendant the benefit in evidence of the testimony of a qualified practitioner of law in the state of Illinois. The purport of this testimony was to show that the established law of Illinois was as the stated theory of the defendant assumed it to be. A plea was interposed, addressed to both counts, undertaking to assert the same theory against the right of this plaintiff to recover any damages for mental distress. A plea is not the approved method of assailing the recoverability of claimed elements of damages. Objections to the admission of evidence or instructions to the jury, as well as motion to strike, are the recognized means to that end.

(11) "The general rule of law  *  *  *  is, that a contract is governed, as to its nature, obligation, validity, and interpretation, by the law of the place where it is made, unless the parties have in view some other law, or unless it is to be wholly performed in some other place, in which case the law of the place of performance, or the law which both parties had in view must

govern."—*Sou. Ry. Co. v. Harrison,* 119 Ala. 539, 544, 24 South. 552, 557 (43 L. R. A. 385, 72 Am. St. Rep. 936), and cases there cited. In the *Harrison Case* it was also soundly said: "And the weight of authority is, that this rule requires a contract for the transportation of goods by a common carrier from one state or country to another to be governed by the law of the place where it is made and where the performance begins, unless the parties, when entering into the contract, clearly manifest a mutual intention that it shall be governed by the law of some other state or country."

The numerous decisions and texts cited by Chief Justice BRICKELL aptly support the rule announced; and particular reference may be made to Justice Gray's exhaustive opinion on the subject in *Liverpool Steam Co. v. Phoenix Ins. Co.,* 129 U. S. 397, 447-458, 9 Sup. Ct. 469, 32 L. Ed. 788. The decision of this court in *Sou. Ex. Co. v. Gibbs,* 155 Ala. 303, 46 South. 465, 18 L. R. A. (N. S.) 874, 130 Am. St. Rep. 24, is opposed to the sound rule stated.—*Sou. Ry. Co. v. Harrison, supra,* and other authorities. The court delivered no opinion in *W. U. T. Co. v. Hill,* 163 Ala. 18, 50 South. 248, 23 L. R. A. (N. S.) 648, 19 Ann. Cas. 1058. The error in the *Gibbs Case* seems to have resulted from the misapprehension that the contract there under view was to be wholly performed in Alabama; whereas, it was made in New York, and was to be partially performed there and in intervening states, as well as in Alabama. The consideration effectually prevents the acceptance as authority of the quotation therein made from *Hanrick v. Andrews,* 9 Port. 9, 26. The soundness of the cases of *Curtis v. D. L. W. R. R. Co.,* 74 N. Y. 116, 30 Am. Rep. 271, and *Brown v. Camden R. R. Co.,* 83 Pa. 316—the authorities largely relied upon to support the view prevailing in our *Gibbs Case*—were reflected upon by the observations of Justice Gray in the opinion before cited. Certainly these two decisions, as well as the *Gibbs Case,* are not in harmony with the distinct weight and reasons of the authorities on the question. The editor's note to the *Gibbs Case,* 18 L. R. A. (N. S.) 874, may be consulted with profit. The Ohio court, in *Pittsburg Ry. Co. v. Sheppard,* 56 Ohio St. 68, 46 N. E. 61, 60 Am. St. Rep. 732, cited in the opinion in the *Gibbs Case,* accords with its doctrine. We have since only once recognized and applied the doctrine of the *Gibbs Case;* and that was in *W. U. Tel. Co. v. Fuiel,* 165 Ala. 391, 396, 397, 51 South. 571, but, with the overruling of its

predecessor, the *Fuel Case* must be taken as overruled to that extent. The contract involved in the *Gibbs Case* was single and indivisible, though to be partially performed in New York state, where made, and in Alabama, where completed performance could alone be accomplished.

"It is generally agreed that the law of the place where the contract is made is prima facie that which the parties intended, or ought to be presumed to have adopted as the footings upon which they dealt, and that such law ought therefore to prevail in the absence of circumstances indicating a different intention, as, for instance that the contract is to be entirely performed elsewhere, or that the subject matter is immovable property situated in another country. * * *"—*Lloyd v. Guilbert,* 1 Q. B. 122, 123; 6 B. & S. 100, 133.

There was nothing in the subject-matter or in the circumstances of the *Gibbs Case* to alter or to avert the prima facie presumption that the law of the contract was intended by the parties to be the law of the place where it was made. There being nothing in the subject-matter or in the circumstances involved in or pertaining to the contract to transmit and to deliver the message to this plaintiff, to alter or to avert the application or the effect of the presumption that the parties engaged in Alabama, with reference to and regard for the laws of this state, it must be held that the contract was an Alabama contract, and was and is governed in respect of the consequences of its breach by the law of this state; and, in consequence, that in an action ex contractu for the breach of the contract, damages for mental distress, there being shown loss in estate, where of the elements of actual damages recoverable. So far as we are now advised, there is no federal enactment, touching interstate commerce, of which this message was a part, that exempts the contract in question from the stated operation and effect of our law where the breach thereof is the cause asserted.

(12-14) The first count, being ex delicto, is governed by a different principle, though with reference to it there is great conflict in the authorities. Our opinion is that the better rule is that stated by Justice Holmes in *Western U. Telegraph Co. v. Brown,* 234 U. S. 542, 547, 34 Sup. Ct. 955, 58 L. Ed. 1457. The cause of action in such cases is grounded in the breach of the obligation imposed by the law of the place where the tort is committed, and the measure and elements of the recovery for the wrong suffered

[Western Union Tel. Co. v. Favish.]

is that prescribed by the law of the place where the tort is committed. The tortious conduct declared on in the first count occurred in the state of Illinois, where, under the circumstances disclosed by this record, damages for mental distress were not recoverable. The deposition offered to establish this state of the applicable law in Illinois was hence relevant to the issue tendered, in part, by that count. But the deposition was offered without any specification or restriction of its appropriate purpose to avert the recovery of damages for mental distress in consequence of the tortious conduct declared on in the first count. It was inadmissible under the issues tendered by the second count, which was only for the breach of the contract. So, the deposition was of the species of evidence admissible for some purposes and inadmissible for others. The objection was general, and the court sustained it. Where evidence—admissible for one or more purposes, within the issues raised by the pleadings—is offered without restriction or limitation to the purpose for which it is admissible, and the objection is general, the judgment will not be reversed, whether the court sustains or overrules the general objection.—*Davis v. Tarver,* 65 Ala. 98; *Barfield v. Evans,* 187 Ala. 579, 65 South. 928; Jones on Ev. (2d Ed.) § 894, p. 1147; *Hurlbert v. Hall,* 39 Neb. 889, 58 N. W. 538; *Mine, etc., Co. v. Parke,* 107 Fed. 881, 47 C. C. A. 34. The distinction indicated was not observed in the framing of some of the special charges requested by and refused to the defendant. The case appears to have been tried without regard to the distinction. Error cannot be predicated on their refusal.

There was no error in instructing the jury that a prima facie case was made out by the plaintiff by showing that the message accepted for transmission by the company was not correctly transmitted and delivered.—*W. U. Tel. Co. v. Chamblee,* 122 Ala. 428, 435, 25 South. 232, 82 Am. St. Rep. 89.

No reversible error appearing, the judgment must be affirmed.

Affirmed. All the Justices concur.

### ON REHEARING.

(15) Upon the single ground, to be stated, the application for rehearing must be granted; and for this error the judgment must be reversed and the cause remanded. In the oral charge

[Louisville & Nashville R. R. Co. v. Davis.]

the court said to the jury: "Now, the plaintiff testified that he derived from that (i. e., the message delivered to him in Chicago) that his wife had been operated on."

The bill of exceptions purports to contain all of the evidence offered on the trial. According to this bill of exceptions, the plaintiff did not testify as the court told the jury; and in so incorrectly advising the jury upon a matter of evidence vital to the issue, the jury's province was invaded, and error to reverse was committed.

Reversed and remanded. All the Justices concur.