22 So.2d 920

### LANGLEY v. STATE.
5 Div. 222.

Court of Appeals of Alabama.
May 22, 1945.

Rehearing Denied June 19, 1945.

164

Paul J. Hooton, of Roanoke, and Jacob A. Walker, of Opelika, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant was put on trial under an indictment charging him with the offense of murder in the first degree, for the killing of Bob Leach. He was convicted of the offense of manslaughter in the first degree and his punishment fixed at imprisonment in the penitentiary for the term of nine years. He duly filed a "motion for a new trial" which was overruled, with exception reserved. From the judgment of conviction rendered on the verdict of the jury, and from the judgment overruling his "motion for a new trial," he brings this appeal.

We have given the evidence in the case the most careful and critical examination of which we were capable. We do not believe it would be helpful for us to undertake to narrate it in detail.

We will simply say that appellant admitted that he shot with a pistol said Bob Leach. And that the evidence shows without peradventure that deceased died as a result of said shot.

▆▆▆▆ Appellant sought to be justified by reason of self-defense—as that term was fully defined to the jury.

We are disposed to use—mutatis mutandis—as being in every respect applicable here, language which we used in our opinion in the case of Coates v. State, 29 Ala. App. 616, 199 So. 830, viz.:

"It was shown, we may say without dispute, that he killed Bob Leach by shooting him with a pistol—which we know to be a deadly weapon.

"As we said in the opinion in the case of Grays v. State, 28 Ala.App. 394, 185 So. 191, we repeat, here: 'The evidence in this case is, without dispute, that the homicide was committed by the use of a deadly weapon; where such is the case, the proof of the use of a deadly weapon raises the presumption of malice, and throws upon the defendant the burden of repelling the presumption, unless the evidence which proves the killing shows, also, that it was done without malice.'

"Or, as the Supreme Court said in the case of Cooley v. State, 233 Ala. 407, 171 So. 725, 727: 'Defendant's testimony admits an intentional killing with a deadly weapon. The burden was then upon him to prove * * * self-defense * * *. And, though the evidence of defendant may have been without dispute, its credibility was for the jury * * *. They were not bound to accept it as true * * *. Indeed, they might well have rejected it in their discretion. Since they did so, their verdict was well supported.'

"The above quotations, especially the one from Cooley v. State, which controls us (Code 1940, Tit. 13, § 95), seem conclusive of the principal question argued here by appellant's distinguished counsel as a reason for the reversal of the judgment of conviction.

"It is true that defendant was the only eyewitness to the killing of deceased—at least after deceased's eyes were closed. And that his testimony made out a perfect case of self-defense. And that unless the testimony of defendant is given some degree of credibility the circumstances of the killing are wholly speculative. But the jury had the right to disbelieve his evidence. And the presumption which arose from the 'intentional killing with a deadly weapon'—abundantly shown—was sufficient to support the verdict returned. Cooley v. State, supra.

"We are not unimpressed with the forceful argument of appellant's counsel (though we do not now recall that counsel in the instant case *made* the argument) to the effect that the circumstances here are comparable to those in the case of McDowell v. State, 238 Ala. 482, 191 So. 894, 899,

wherein four Justices of our Supreme Court finally concluded that the judgment ought to be reversed because the trial court refused the defendant a new trial, in turn because the verdict was 'contrary to the great weight of the evidence.' But the things which impressed the said four Justices in the McDowell case are not present, here. And we are unable to say that the trial court, who saw and heard the witnesses, and thus had an advantage over us, (See, we interpolate, Kent v. Lindsey, 30 Ala.App. 582, 10 So.2d 54) erred in refusing to set aside the verdict of the jury"—this because it was "contrary to the great weight of the evidence."

And see Heath v. State, 30 Ala.App. 416, 7 So.2d 579, certiorari denied Id. 242 Ala. 632, 7 So.2d 580.

■ We believe we ought to say, in view of the unusually persuasive argument advanced here as to why—in the light of the undisputed testimony of the appellant— and his being shown to possess an exemplary character and reputation—the verdict of the jury should have been set aside as being against the great weight of the evidence, that it should be kept steadily in mind that our views are controlled by the fact that we are reviewing the action of the *trial court*. And that action, here, is bolstered by the presumption that obtains. Kent v. Lindsey, supra. We will not, we are sure, be understood as saying that if we had been sitting as the nisi prius judge we would not have set aside the verdict on the ground mentioned above.

But the judgment of conviction must be reversed, because of errors occurring during the course of the trial, and afterwards.

■ Counsel was employed to assist the Solicitor in the prosecution of the appellant.

And we have said above that appellant proved—without dispute—an excellent character and reputation.

One of the large number of witnesses testifying to the good character of the appellant was the Probate Judge of the County.

In the opening argument to the jury on behalf of the State, the specially employed counsel, above, stated to the jury as follows, viz.: "The defendant has offered as a character witness in his behalf Judge Maddox Brittain, the Judge of Probate of this County. The fact is on the preliminary trial of this case Judge Brittain committed the defendant to jail without bail."

No evidence had been offered on the trial before the jury that Judge Brittain had committed appellant to jail without bail on the preliminary trial of his case. And, indeed, we think none could have been, legally, offered. See Lee et al. v. State, 20 Ala.App. 334, 101 So. 907.

Appellant's counsel promptly interposed objection to the argument as quoted above; whereupon the court sustained the objection and told the jury "not to consider the statement"—nothing more.

But we believe irreparable harm had been done to appellant's cause.

The Probate Judge is generally regarded as being the leading citizen of the County; certainly *one* of the leading citizens. And the remarks, quoted, of the said counsel representing the State, above, would, certainly, in our opinion, seriously impair, if not vitiate and destroy, the weight of the Probate Judge's testimony on behalf of the appellant in this case. The more is this true when the words were addressed to a lay jury, unfamiliar with the technical considerations which operated upon said Probate Judge's actions when sitting as a committing Magistrate.

When the words quoted were spoken; when the extraneous and inadmissible information therein contained was imparted to the jury; the harm was done. And, in our opinion, nothing that the trial court could have done would have repaired the damage. Certainly not his perfunctory admonition to the jury "not to consider the statement."

■ In Anderson v. State, 209 Ala. 36, 95 So. 171, 178, our Supreme Court said that "no iron-clad rule exists by which the prejudicial qualities of improper remarks or argument of counsel can be ascertained in all cases, much depending upon the issues, parties, and general circumstances of the particular case."

■ And in the opinion in the case of Birmingham News Co. v. Payne, 230 Ala. 524, 162 So. 116, 117, that court said: "Arguments of counsel to the jury, requiring the granting of a mistrial, *or the granting of a new trial on motion,* must not only be (1) improper and illegal, but (2) of such prejudicial character as that its probable effect is ineradicable by exclusion and rebuke on the part of the court," citing Anderson v. State, supra, and a number of other cases.

And we call attention to the case of Sinclair v. Taylor, 233 Ala. 304, 171 So. 728, where cases of a similar holding are collected and cited.

Appellant's motion to set aside the verdict of the jury and grant unto him a new trial should have been granted because of the State's counsel's argument we have quoted hereinabove. Authorities supra.

Then, besides, we think error prejudicial to appellant's rights was committed with reference to the exhibition to the jury by the Solicitor of the bloodstained shirt of the deceased.

Appellant's counsel have seen fit to cite to us the case of Floyd v. State, 245 Ala. 646, 18 So.2d 392, 393, in the opinion in which our Supreme Court said: "The clothing of deceased, as well as that of the accused, are usually held admissible on trials of homicide. If tending to elucidate the transaction, to identify any of the parties, to connect the accused with the crime, or to show the character of the wound, motive or intent of the killing or degree of the crime, whether the killing was in self-defense or not, they are admissible. If such objects tend to corroborate or disprove, illustrate or elucidate any other evidence, they are admissible, though such evidence may have a tendency to bias or prejudice the jury, to elicit their sympathy for, or animosity toward either the deceased or the accused."

And we said nothing to the contrary in our opinion in the case of Benton v. State, 31 Ala.App. 338, 18 So.2d 423.

■ But the law as declared in the opinion in the case of Boyette v. State, 215 Ala. 472, 110 So. 812, so far as we can find, still stands, viz.: "The clothes worn by the deceased should never be offered in evidence unless they 'have some tendency to shed light upon some material inquiry.'" In that same opinion our Supreme Court said: "The trial court should not have permitted the introduction of the clothing of the deceased, as it shed no light whatever upon any material inquiry in the case, *and was but the presentation of an unsightly spectacle calculated to prejudice the jury.*" (Italics supplied by us.) To the same effect is the holding in the more recent case of Peters v. State, 240 Ala. 531, 200 So. 404.

■ In the instant case the bloodstained shirt of the deceased, which was pierced by no bullet hole, and which was utterly incapable of accomplishing any of the purposes listed hereinabove as being held in Floyd v. State, supra, requisite for its admission into the evidence, was taken by the Solicitor from a box and exhibited to the jury with the remark: "Well, I will show you a shirt."

Upon vigorous objection by appellant's counsel the Solicitor stated: "If any question is going to be raised about it, I will leave it off."

But we think the harm had been done. Certainly the bloody shirt—which has been sent up here for our inspection, and presents, indeed "an unsightly spectacle calculated to prejudice the jury"—had been exhibited to the jury; and in such a way that we, along with the Attorney General here representing the State, "are not sure but that it was for all intents and purposes, admitted into the evidence" under (according to) the authority of Kabase v. State, Ala.App., 12 So.2d 758.[1] In fact, we think it was so admitted. And the perfunctory remark of the Solicitor: "If any question is going to be raised about it, I will leave it off," did not, and could not, erase from the minds of the jury the prejudice which the gruesome sight undoubtedly engendered.

And this transaction with regard to the bloodstained shirt of the deceased we feel is an additional reason why appellant's motion to set aside the verdict of the jury should have been granted.

The case was, in the main, well and carefully tried.

The learned trial court gave to the jury an able and comprehensive oral charge. In addition, he gave them at appellant's request some thirty-five written charges, which evidence much skill and care in their preparation. Seemingly, every applicable principle of the law governing was covered and included in the charges given to the jury.

We shall not stop to inquire whether any requested and refused written charge was or was not improperly refused. The same situation will probably not occur on the retrial to follow this decision.

Likewise, a small number of exceptions reserved on the taking of testimony will not here be considered. In all probability they will be absent in their present form on another trial.

[1] 31 Ala.App. 77.

The proceedings were ably conducted, both on the part of the trial judge, the attorneys for the State, and for the appellant. In the view we take no further discussion by us is required for the purposes of the re-trial of the case.

But for the errors we have pointed out the judgment of conviction is reversed, and the cause remanded.

Reversed and remanded.