78 So.2d 328

### John BARBOUR

### v.

### STATE.

### 6 Div. 522.

Supreme Court of Alabama.

Oct. 7, 1954.

Rehearing Denied March 10, 1955.

Beddow & Jones, Roderick Beddow and Robt. W. Gwin, Birmingham, for appellant.

Si Garrett, Atty. Gen., and Robt. Straub, Asst. Atty. Gen., for the State.

GOODWYN, Justice.

. The appellant, John Barbour, was indicted, tried, and convicted of murder in the first degree for killing A. G. Parsons, Jr., and sentenced to life imprisonment. Appellant entered pleas of "not guilty" and "not guilty by reason of insanity."

The evidence clearly shows that appellant shot deceased four times with a pistol, twice in the back and twice in front, thereby causing his death. · Barbour did not deny firing the fatal shots.

The deceased's wife and two guests who witnessed the homicide testified that on August 23, 1952, at about 9:45 P.M., they, together with the deceased, were seated in the living room of deceased's home·watching a television program. According to these witnesses, the appellant entered the house without knocking, fired two shots into the back of deceased at close range without warning, and fired two other shots as deceased arose from the chair and advanced toward appellant. As he turned to leave the house appellant said: "My name is John Barbour. I am going to give myself up."

·The principal questions argued by counsel for appellant are, generally stated, as follows:

I. That it was error to admit evidence, over objection, concerning appellant's personal and family life for some 15 years prior to the homicide.

II. That it was error to admit in evidence, over objection, a signed statement of appellant's wife concerning matters inconsistent with her sworn testimony during the trial, that such statement was admissible only for the purpose of impeachment, but was admitted for whatever "probative" value it might have; and that it was the duty of the court to affirmatively advise the jury as to the limited purpose for which the evidence was admitted.

III. That the trial court committed error in its refusal to receive evidence calculated to prove (1) the truthfulness of testimony of appellant's wife concerning her relations with deceased, after allowing the state to impeach her testimony by the admission of a prior inconsistent statement, and (2) the truthfulness of a shocking communication transmitted to appellant prior to the homicide, which it was contended was the cause of appellant's alleged insanity.

IV. That it was error to admit in evidence, over objection, articles of clothing worn by deceased at the time of the homicide.

V. That it was reversible error to charge the jury concerning the law of insanity as follows:

"And, as I said, it must be of a fixed or prolonged nature rather than momentary or fleeting; not temporary or effervescent in nature—sane one minute and insane another—more permanent than transient; more or less prolonged as distinguished from effervescent."

### I.

The evidence in support of appellant's plea of insanity appears to be based principally upon marital discord. It is insisted that he was driven to insanity because his wife was running around with the deceased and because he was not allowed to see his children. He is pictured in the testimony in his behalf as an individual who loved his wife and children very much and one who was deeply hurt by his wife's infidelity, and by his children being taken from him. The contention is that he was hurt to the point of insanity. His evidence of insanity included testimony tending to show that for several months prior to the homicide, he neglected his business, appeared to be very depressed and emotional, neglected his personal appearance and clothing, lost all interest in sports, was terribly upset about not getting to see his children, did not appear to look right, was nervous and upset, would talk about his children and start crying, was very irrational and abnormal, had lost his pride, was irritable and short spoken, was very upset over the fact that his children were not with him, talked only about his wife and children, and felt that he was always right and everybody else was wrong. These witnesses testified that, in their opinion, appellant was insane at the time of the homicide. No evidence was introduced by the appellant relative to his insanity prior to the year 1952.

To refute the cumulative effect of this testimony, the state was allowed to propound questions, over appellant's objections, concerning acts and conduct of appellant prior to 1952 in an attempt to show that the appellant had never had a happy home, that he took his own marital responsibilities lightly, and that his acts and conduct throughout his life had been no different than those just prior to the killing.

The evidence indicates that on March 10, 1952, appellant's wife, Mrs. Lorene Barbour, obtained a final decree of divorce from him. After testifying on behalf of appellant concerning her relationship with the deceased during several months prior to the homicide, she was cross-examined by the prosecution concerning portions of appellant's life and background.

The testimony here complained of related to appellant's gambling and non-support of his family many years prior to the homicide; his mistreatment of his wife during her first pregnancy; his drinking and "staying with a girl at a honky tonk" about eleven years before the killing; his

fight with his wife about eight years before the homicide; his separation from his wife at various times during his married life; his over-indulgence in strong drink during several years prior to 1952; and his abusive tendencies towards his wife at various times.

Much of this testimony was admitted without objection. However, objections were made to some of the questions and the objections were overruled. Appellant argues that this testimony concerned matters completely beyond the issues in the case; and that the cumulative effect of the admission of such evidence was to influence the minds of the jury against appellant to the extent that it was impossible for him to receive a fair and impartial trial. Appellant contends that these rulings by the trial court were erroneous and should work a reversal of this case.

█ It has long been held that "wide latitude" is allowed both the defendant and the state in inquiries into a person's mental state when an issue as to the sanity of such person is presented. Peoples v. State, 257 Ala. 295, 299, 58 So.2d 599; Smith v. State, 257 Ala. 47, 49, 57 So.2d 513; Hall v. State, 248 Ala. 33, 36, 26 So.2d 566; Parvin v. State, 248 Ala. 74, 75, 26 So.2d 573; Eldridge v. State, 247 Ala. 153, 154, 22 So. 2d 713; Coffey v. State, 244 Ala. 514, 521, 14 So.2d 122; George v. State, 240 Ala. 632, 637, 200 So. 602; Grammer v. State, 239 Ala. 633, 638, 196 So. 268; Brothers v. State, 236 Ala. 448, 451, 452, 183 So. 433; Deloney v. State, 225 Ala. 65, 70, 142 So. 432; Birchfield v. State, 217 Ala. 225, 228, 115 So. 297; Anderson v. State, 209 Ala. 36, 42, 95 So. 171; Russell v. State, 201 Ala. 572, 78 So. 916; Cawley v. State, 133 Ala. 128, 138, 32 So. 227; McLean v. State, 16 Ala. 672, 680. These inquiries, however, are subject to the necessary limitation that the acts, declarations and conduct inquired about must have a tendency to shed light on the accused's state of mind when the act for which he is being tried was committed. Smith v. State, supra; Parvin v. State, supra; Coffey v. State, supra; Mitchell v. Parker, 224 Ala. 149, 138 So. 832. And coupled with this limi-

tation is the principle that the general range and scope of the inquiry should be left to the sound discretion of the trial court. Eldridge v. State, supra; Brothers v. State, supra; Odom v. State, 174 Ala. 4, 10, 56 So. 913.

The "wide latitude" rule is thus stated in Hall v. State, supra [248 Ala. 33, 26 So.2d 568]:

"But upon the question of insanity a wide range of evidence is allowable. 'It has become a maxim of the law that in cases where insanity is relied upon as a defense, "Every act of the party's life is relevant to the issue."', Brothers v. State, 236 Ala. 448, 183 So. 433, 435.

"Of course as pointed out in Coffey v. State, 244 Ala. 514, 14 So.2d 122, this broad expression must be understood to carry the necessary limitation that the acts inquired about must throw some light upon the inquiry. The Coffey case furnishes an apt illustration of this limitation.

"And our decisions are uniform to the effect that the issue of insanity gives much latitude both to the defendant and the State, for the introduction of evidence of defendant's acts, declarations, and conduct, prior and subsequent to the alleged crime."

█ In the light of the stated rule, we cannot say that the state's evidence on the issue of appellant's insanity was improperly admitted. Although appellant confined his evidence to prove insanity to a few months prior to the homicide, it was competent for the state to extend the inquiry to an earlier period. As stated in Wigmore on Evidence, 3rd Ed., § 233, p. 30:

"There seems to be no agreed definition of the *limit of time* within which such prior or subsequent condition is to be considered; and in the nature of things no definition is possible. The circumstances of each case must furnish the varying criterion, and the determination of the trial judge ought to be allowed to control."

## II.

During the cross-examination of Mrs. Barbour, she identified a signed statement exhibited to her by the state as one made and signed by her several days after deceased was shot. This writing contained statements concerning matters inconsistent with her testimony during the trial. In connection with the admission of the statement in evidence, the record discloses the following:

"Mr. Beddow: * * *

"Now, we are going to object to this statement alleged to have been given in the Solicitor's office in the City of Bessemer on the 28th day of August, 1952, at 8:35, A.M., on the ground it is based on hearsay, and calls for incompetent, irrelevant, immaterial and illegal testimony. It is a violation of every right secured to the defendant by the constitution of the United States and of the State of Alabama.

"The Court: I believe I will sustain the objection to the statement.

"Mr. Sullinger: If the Court please, she says, 'This is my statement.' She says, 'This is the statement I made on that occasion.' I don't vouch for the truth of it.

"We take statements where defendants get up and lie from the beginning to the end; but we take the statements, whatever it is; and they say it is their statement. And if it is their statement, whether it be true or not, it is admissible in evidence for any probative value it must have on the issue involved in the case. The question of what weight the Court and jury, or even we, might give to the statement depends entirely upon the statement itself. She says, 'This is my statement. This is the statement I made.' Now, she says, 'I lied about it. I want to tell another story.'

"Mr. Beddow: No.

"The Court: She said a part of it was a lie.

"Mr. Sullinger: The jury is entitled to know what story she told.

"The Court: I think I will let the statement in; and it is for the jury to say what they believe and what probative force and weight they will accord to the statement.

"Mr. Beddow: We reserve an exception, if Your Honor please, to the admission of the alleged statement."

That a prior statement of a witness, in conflict with the witness' sworn testimony at the trial, is admissible for impeachment purposes is not questioned. Phillips v. State, 248 Ala. 510, 521, 28 So.2d 542. Appellant's argument is that the trial court erred in allowing the statement to be introduced as evidence of the facts recited therein. The contention is that since the statement went to the jury for its "probative" value, and not for the limited purpose of impeachment, the general objection interposed was sufficient, the argument being "that there rests upon the court the duty of affirmatively advising the jury as to the limited purpose for which such evidence is admitted." Our decisions do not seem to support this view. Johns Undertaking Co. v. Hess-Strickland Transfer & Storage Co., 213 Ala. 78, 79, 104 So. 250; Lester v. Jacobs, 212 Ala. 614, 618, 103 So. 682; Western Union Tel. Co. v. Favish, 196 Ala. 4, 13, 71 So. 183; Barfield v. Evans, 187 Ala. 579, 588, 65 So. 928, 931. As stated in the last-cited case:

"It would have been entirely proper for the court ex more at the time of its admission to inform the jury of the limited purpose for which such testimony was admissible; but the trial court cannot be put in error for overruling a general objection where the evidence is admissible for any purpose. It was the duty of the objecting party to invoke the action of the court to the end that a proper limitation of the evidence might be set before the jury."

## III.

The appellant testified that around the middle or latter part of July, 1952, he re-

ceived a long distance telephone call from a person unknown to him who identified himself as a Bessemer deputy sheriff. During this telephone conversation the anonymous caller told him that deceased and appellant's former wife "are practically living together as man and wife up at West End", "have been going on fishing trips together, been down to Gulf Shores and have been up here to Wheeler Dam, been to Guntersville", and made a trip to Tennessee together. He also stated that deceased and Mrs. Barbour had been practically living with another couple in Mrs. Barbour's apartment or in the other woman's apartment. Subsequently the appellant attempted to elicit from several witnesses testimony calculated to prove the truthfulness of the information received by appellant from this anonymous telephone caller, and also to corroborate the testimony of Mrs. Barbour in this regard. The court refused to allow this evidence to be introduced.

Appellant insists that the trial court erred in refusing to permit him to prove (1) the truthfulness of the communication received by him concerning his former wife's improper relations with the deceased immediately prior to the homicide, and (2) the truthfulness of the sworn testimony of Mrs. Barbour concerning her relations with the deceased, after allowing the state to attack her credibility by the admission of the prior inconsistent statement made by her. In support of the first contention he relies upon statements made by this court in Naugher v. State, 241 Ala. 91, 1 So.2d 294, and Morris v. State, 234 Ala. 520, 175 So. 283. They are as follows:

"In a homicide case under a plea of insanity, the recent illicit relations between the defendant's wife and the deceased are matters of legitimate inquiry under proper conditions. However, where the wife is the first witness for the State against the husband, she cannot on cross-examination be interrogated concerning such matters, in the absence of some proof of the insanity of the defendant, such matters tending to prove the cause of insanity rather than insanity itself. Too, the fact that her answers would probably tend to incriminate her is sufficient reason for sustaining the State's objection to the questions." Naugher v. State, supra [241 Ala. 91, 1 So.2d 296].

"The defendant offered evidence to establish the infidelity of his deceased wife not only by rumor but by specific acts or circumstances as bearing upon his mind, and, this issue having been injected in the case, the State had the right to refute and rebut such evidence by not only showing no such rumors as well as no grounds for same." Morris v. State, supra [234 Ala. 520, 175 So. 284].

It is also noted that the following statement was made in George v. State, 240 Ala. 632, 638, 200 So. 602, 607:

"Here, the court charged the jury as follows: 'I charge you, gentlemen of the jury, that there is no evidence of adultery in this case, or an act of adultery as regarded by law.' Under defendant's plea of insanity, it was proper to prove the adultery of the defendant's wife, and this proof may be supplied by circumstantial evidence. In the light of the testimony touching the relationship between defendant's wife and Jim Green, the question of the wife's adultery was for the jury, to whom is committed the important and exclusive right of weighing the evidence. The foregoing charge is a clear violation of this salutary rule, and must work a reversal of this cause."

Although the quoted extracts, when considered out of context, indicate a measure of support for appellant's contention, we do not consider those decisions as controlling here. It is apparent, from an examination of these cases, that the question of admissibility of evidence concerning the wife's infidelity arose under conditions different from those in the present case.

In Ragland v. State, 125 Ala. 12, 28, 29, 27 So. 983, 987, this court said:

"The letter of Lena, the daughter of defendant, set out in the record, was

admitted in evidence very clearly, under the plea of 'not guilty by reason of the insanity of defendant.' The court, during the progress of the trial, announced, when evidence was offered calling for the ruling, and very properly we think under the facts of the case, that the guilt or innocence of the deceased, of improper relations with defendant's daughter, was not a material question in the case, and declined to allow any testimony as to the innocence of deceased. In the closing argument of counsel for the State, while commenting on and discussing the letter of Lena Ragland, he argued to the jury, that they could and should draw unfavorable inferences against defendant because he had not brought Lena and put her on the witness stand, there to testify, that deceased had seduced her. To this course of argument defendant's counsel objected, and moved the court that such argument be not allowed before the jury. Counsel making the argument, contended that it was proper, and the court overruled defendant's objection and allowed the state's counsel to proceed with such argument, to which defendant excepted. It is very clear, that under the facts of the case, and under the plea of not guilty, the guilt or innocence of deceased in the seduction of defendant's daughter was not an issuable fact. If Lena had been present, the state would not have introduced her for the purposes stated, nor would it have been allowable for defendant to have done so. It is equally clear, that the information received at the hour it was, by defendant, through his daughter's letter, whether she told the truth or not,—that deceased had seduced her,—was competent evidence to be considered with all the other evidence in the case, as bearing on the plea of insanity. Her presence and swearing to the guilt of deceased, could have added nothing to the force or effect of the information imparted to defendant by her letter. The argument indulged by counsel should not have been permitted, and the court erred in not suppressing it."

In Metcalf v. State, 17 Ala.App. 14, 81 So. 350, the trial court allowed the defendant's wife to testify concerning the details of a fight between herself and the deceased. The evidence indicated that the defendant, upon learning of the assault made on his wife, immediately went looking for deceased and killed him. The pleas interposed were not guilty, and not guilty by reason of insanity. In rebuttal of the wife's testimony, the State was allowed, over objections, to contradict the wife's statement concerning the details of the difficulty. The Court of Appeals had this to say:

"The evidence in the case, and even the testimony of the defendant himself, is to the effect that, when the defendant learned of the assault made on his wife by the deceased, defendant armed himself, sought out the deceased, whom he found in a dance hall in Jasper, and when he found him he proceeded to kill him. There was therefore no element of self-defense involved in the trial, no question as to who brought on the difficulty, and hence the details of the mistreatment of defendant's wife by deceased was not competent evidence under the plea of not guilty. Gafford v. State, 122 Ala. 54, 25 So. 10; Thomas v. State, 150 Ala. 31–40, 43 So. 371; Angling v. State, 137 Ala. 17, 34 So. 846; James v. State, 167 Ala. 14–18, 52 So. 840; McWilliams v. State, 178 Ala. [68] 69, 60 So. 101. The pertinent inquiry was: What was the condition of the defendant's wife as a result of the assault when defendant got home and saw her, and what was told to him by his wife and others regarding the assault? These were the facts to be considered by the jury, along with the other evidence in the case, in passing upon the question as to whether the facts and circumstances coming to the knowledge of defendant were of such a character as were reasonably calculated to provoke sudden passion and resentment, and that the homicide was

traceable solely to the passion thus engendered so as to reduce the killing from murder to manslaughter (McWilliams v. State, 178 Ala. [68], 69, 60 So. 101); or whether the facts and circumstances as they came to the defendant were calculated to render the defendant insane, within the meaning of the law defining insanity. The question as to whether the true details of the difficulty between defendant's wife and deceased had been told defendant was not material to either of these issues.

"It is the mental condition of the defendant at the time of the homicide as affected by information coming to him, and upon which he acts, that is material. Rogers v. State, 117 Ala. 9, 22 So. 666. The truth or falsity of the details of the difficulty between defendant's wife and deceased not being material, it follows that the testimony of the wife could not be impeached by evidence contradicting her statement as to what occurred at the time she was beaten by the deceased. Crawford v. State, 112 Ala. 1, 21 So. 214."

In a later case, Quinn v. State, 22 Ala. App. 331, 115 So. 417, the Court of Appeals said:

"During the examination of the witness Clara Guinn, the daughter of defendant, the court correctly ruled that she could not testify to the details of what took place between her, deceased, and one Andy Carden. The question at issue was not what were the actual facts occurring between Clara, the deceased, and Carden, but what was told to defendant. The seduction or rape of Clara is not in issue here. The inquiry here to be determined is the sanity of defendant at the time of the homicide, and the testimony as to what the deceased did to Clara, the defendant's daughter, is relevant on the issue of defendant's plea of insanity only in so far as such facts and circumstances were communicated to defendant prior to the homicide. Ragland v. State, 125 Ala. 12, 27 So. 983."

The court then held that the trial court committed error in admitting evidence tending to show the falsity of the information communicated to the defendant on the theory that the truth of Clara's statements as to her seduction by the deceased and rape by Carden was not in issue and was immaterial and, therefore, the witness was not subject to impeachment upon an immaterial issue.

There is no doubt that an alleged shocking communication is properly admissible, to be considered with all other evidence in the case, as bearing on the plea of insanity. Ragland v. State, supra.

We are, however, unable to see how the objective truth or falsity of such a communication would be relevant to an issue as to the recipient's sanity. If the accused received information concerning the alleged infidelity of his wife and relies on the shocking nature of such communication as a cause of his alleged insanity, it matters not whether the information received was in fact true or false. It appears, then, that the fact that such communication was received and the nature of the information contained therein would be the only matters relevant to the issue.

The appellant makes reference to an article entitled "Relevancy of Evidence in Alabama Upon an Issue of a Person's Mental Capacity", 4 Ala.Lawyer 384, 398, in which it is stated:

"* * * Frequently the best and sometimes the only way the State has of proving that the alleged communication was not made, is to show the untruth of the communication. Block that way and the opportunity is made much easier for a defendant to fraudulently invoke to his favor the instinctive passions of the jury and to delude them with a fake defense. * * * Nor does there seem to be any good reason why the accused should not be permitted to introduce evidence of the truth of the claimed

communication, and thereby preclude any possible skepticism of the jury as to the communication having been made; and this, even though the State has not introduced evidence attacking the testimony tending to prove the making of the communication."

Wigmore on Evidence, Vol. II, 3rd Edition, § 263, says:

"That the objective truth * * * of the fact reported or rumored may sometimes be relevant seems clear namely, when the *non-existence of the* fact is offered as tending *to show that the witness testifying to the communication of the alleged fact* is testifying truly."

These statements are directly opposed to the holdings in Ragland v. State, supra, Metcalf v. State, supra, and Guinn v. State, supra.

We here note that in the present case no attempt was made by the state to prove that the communication testified to by the appellant was not made, or that the substance of the communication which reached him was different from the version related by him.

As previously indicated, the only service performed by the admission of a shocking communication, in a case such as this, is to throw some light on the probable cause of the claimed insanity. The insanity, not the cause thereof, was the issue to be determined by the jury in this case. If the jury had been allowed to consider testimony concerning the truth of the communication received by the appellant, it is likely that the real issue would have been reduced to a secondary position in the minds of the jurors, and the infidelity of appellant's wife, the alleged cause of appellant's insanity, would have been given primary consideration and would have thereby added further confusion to the determination of the real issue involved.

It is our opinion, therefore, that the trial court correctly refused to allow the appellant to introduce evidence calculated to prove the truthfulness of the alleged shocking communication.

We think that the interests of justice will be better served by following the decision of this court in Ragland v. State, supra, as followed by the Court of Appeals in Guinn v. State, supra, and Metcalf v. State, supra.

Having thus determined that Mrs. Barbour's testimony concerning the details of her improper relations with deceased was not relevant or material to the issue here involved, we must now decide whether the trial court erred in refusing to allow evidence calculated to sustain Mrs. Barbour's testimony in this regard, after her credibility was attacked by the admission of her prior inconsistent statement.

■ The general rule governing instances wherein matters material to the inquiry are involved is stated in 70 C.J. § 1365, p. 1179, as follows:

"Where a witness has been impeached or contradicted the party by whom he was introduced is entitled to introduce evidence to corroborate his testimony."

However, a different rule applies where the testimony of the impeached witness includes collateral matters, and the new evidence sought to be adduced to sustain the witness concerns matters immaterial to the issue in controversy. 70 C.J. § 1134, p. 923.

■ Our view is that the testimony sought to be adduced here, supporting Mrs. Barbour's testimony concerning her acts and relations with deceased, was properly refused. It seems to us that the reasons given by this court in support of the rule against impeachment of a witness on collateral, irrelevant, or immaterial matters are also applicable here. They have been stated as follows:

"The principal reasons of the rule are, undoubtedly, that but for its enforcement the issues in a cause would be multiplied indefinitely, the real merits of the controversy would be lost sight of in the mass of testimony to immaterial points, the minds of jurors would thus be perplexed and confused, and their attention wearied and dis-

tracted, the costs of litigation would be enormously increased, and judicial investigations would become almost interminable. An additional reason is found in the fact, that the evidence not being to points material in the case, witnesses guilty of false swearing could not be punished for perjury." Blakey's Heirs v. Blakey's Executrix, 33 Ala. 611, 620.

## IV.

■■■■■■ After receiving testimony concerning the location of wounds on the body of deceased, the state introduced, over the objection of appellant, the shirt and undershirt worn by deceased at the time of the homicide. The testimony indicated that these articles of clothing had been pierced by the bullets that entered the deceased's body.

"The clothing of deceased, as well as that of the accused, are usually held admissible on trials of homicides. If tending to elucidate the transaction, to identify any of the parties, to connect the accused with the crime, or to show the character of the wound, motive or intent of the killing, or degree of the crime, whether the killing was in self-defense or not, they are admissible. If such objects tend to corroborate or disprove, illustrate or elucidate any other evidence, they are admissible, though such evidence may have a tendency to bias or prejudice the jury, to elicit their sympathy for, or animosity toward either the deceased or the accused. Rollings v. State, 160 Ala. 82, 49 So. 329; Whitaker v. State, 106 Ala. 30, 17 So. 456; Curtis v. State, 118 Ala. 125, 24 So. 111; McCormack v. State, 102 Ala. 156, 161, 15 So. 438; Gassenheimer v. State, 52 Ala. 313; Campbell v. State, 23 Ala. 44." Teague v. State, 245 Ala. 339, 341, 16 So.2d 877, 879; Floyd v. State, 245 Ala. 646, 647, 18 So.2d 392.

And, the fact that such pieces of evidence are merely cumulative of detailed oral testimony does not affect their admissibility. Stallings v. State, 249 Ala. 1, 4, 5, 32 So.2d 233; Weems v. State, 222 Ala. 346, 347, 132 So. 711; McKee v. State, 33 Ala.App. 171, 31 So.2d 656, certiorari denied 249 Ala. 433, 31 So.2d 662.

In Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, 566, certiorari denied 243 Ala. 671, 11 So.2d 568, the Court of Appeals said:

"If such proffered evidence (clothing or photographs) shows the location of the bullet holes, it is held to be relevant 'as shedding light upon the character and location of the wound(s) on the body, though it was merely cumulative evidence, and there was no dispute. It was a circumstance, material, if cumulative. The admission of cumulative evidence, even upon a fact not disputed, is not prejudicial error.' Weems v. State, 222 Ala. 346, 347, 132 So. 711, 713; Hyche v. State, 22 Ala. App. 176, 113 So. 644, certiorari denied 217 Ala. 114, 114 So. 906; Pierce v. State, 28 Ala.App. 40, 178 So. 248."

■■■■■ The appellant insists that the admission in evidence of these articles of clothing was error and relies on Boyette v. State, 215 Ala. 472, 110 So. 812, and Langley v. State, 32 Ala.App. 163, 22 So.2d 920, certiorari denied 247 Ala. 176, 22 So. 2d 923, in support of this contention. The decision in Langley v. State, supra [32 Ala. App. 163, 22 So.2d 922], relies strongly on the Boyette case, supra. These cases are clearly distinguishable from the present case and are not controlling here. In these cases the clothing was not pierced by the bullets causing the deadly wounds and, therefore, did not "tend to corroborate or disprove, illustrate or elucidate any other evidence". Here, the clothing showed the location of the bullet holes and was relevant "as shedding light upon the character and location of the wound(s) on the body, though it was merely cumulative evidence, and there was no dispute." This distinction is clearly stated in Hyche v. State, 22 Ala.App. 176, 177, 178, 113 So. 644, and we do not think further discussion is necessary.

Under the rule of the foregoing authorities, the articles of clothing here involved

310

were relevant, and even though cumulative, were admissible.

## V.

Exception was taken by appellant to the following portion of the trial court's oral charge, viz.:

"And, as I said, it must be of a fixed or prolonged nature rather than momentary or fleeing; not temporary or effervescent in nature—sane one minute and insane another—more permanent than transient; more or less prolonged as distinguished from effervescent."

 It is apparent that the court, in so charging the jury, gave the identical charge which was given in Grant v. State, 250 Ala. 164, 33 So.2d 466, and set out in the report of that case, 250 Ala. at page 165, 33 So.2d at pages 467, 468. What was there said concerning the court's charge is likewise applicable here. It was there stated:

"When insanity, which is the result of disease of the brain, is present at the time of the commission of the act and is the producing cause of the act, it it a good defense. It is not required, however, that such insanity shall have existed for any definite period, but only that it existed when the act occurred. 22 C.J.S., Criminal Law, § 57. In referring to temporary insanity the court did not depart from the foregoing rule. Temporary insanity has a meaning which differentiates it from a condition caused by disease of the brain and confines it to a condition due to causes other than disease, usually intoxication. Gunter v. State, 83 Ala. 96, 108, 109, 3 So. 600. See also 44 C.J.S., Insane Persons, § 8. In the present case, however, there was no proof of intoxication and if for that reason it is claimed that the charge was misleading to the point of injury, it is sufficient to say that when these parts of the charge are considered in the light of the entire charge and in connection with the evidence, there is nothing prejudicial. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix; Bristow v. State, 24 Ala.App. 439, 136 So. 837, certiorari denied 223 Ala. 390, 136 So. 838.

"Examination of such authorities as Wingard v. State, 247 Ala. 488, 25 So. 2d 170, and Parsons v. State, 81 Ala. 577, 2 So. 854, 60 Am.Rep. 193, will show that the court correctly stated the well-known rules to sustain the defense of insanity. The charge also correctly showed that the law of this state does not sanction emotional or moral insanity as an excuse for crime. Wingard v. State, supra; Coffey v. State, 244 Ala. 514, 14 So.2d 122; Reedy v. State, 246 Ala. 363, 20 So.2d 528. Furthermore more temporary mania not the result of a disease of the mind does not constitute insanity. Braham v. State, 143 Ala. 28, 38 So. 919; Parrish v. State, 139 Ala. 16, 36 So. 1012." [250 Ala. 164, 33 So.2d 471]

The portions of the oral charge dealing with insanity as a defense will be included in the report of this case.

 The following from the case of Coffey v. State, 244 Ala. 514, 517, 518, 14 So.2d 122, 124, seems particularly appropriate to the case under review:

"The evidence as it relates to the plea of not guilty by reason of insanity falls far short of establishing the fact that appellant's mind was so affected as to render him unaccountable for his act. While there was some evidence tending to show that appellant was not in all respects in his normal mind at the time of the homicide, no verdict in agreement with the great weight of the evidence could have found anything more to the point than an expression of emotional insanity, for which there is no recognition in the law of this state as an excuse for crime. Parsons v. State, supra [81 Ala. 577, 2 So. 854]; Wilkes v. State, supra [215 Ala. 428, 110 So. 908]; Manning v. State, supra [217 Ala. 357, 116 So. 360]."

We have carefully examined the entire record and do not find therein any error to reverse.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and CLAYTON, JJ., concur.